## SORG PAPER CO v HAYES, Admrx

Ohio Appeals, 1st Dist, Butler Co

No 518. Decided March 28, 1932

Mr. John A. Crist, Middletown, and Messrs. Andrews, Andrews & Rogers, Hamilton, for plaintiff in error.

Mr. G. C. McCandless, Mr. Harry J. Koehler, Jr., Hamilton, and Walter S. Harlan, Hamilton, for defendant in error.

HAMILTON, J.

The evidence established the faulty condition of the floor, lack of inspection, and the happening of the accident.

The first contention is that the plaintiff has failed to prove any pecuniary loss or dependency of the next of kin.

The plaintiff proved that the decedent left a widow and three children, and that they lived together in the home of the deceased. It is true there is evidence to the effect that at least two of the children were wage earners and all had reached their majority.

The evidence is that the decedent was 48 years of age, a master plumber, in good health, a good, careful workman, and earned $55.00 per week. This evidence is sufficient to authorize substantial damages, if liability is shown.

In the case of **Chester Park Co. v Schulte, Admr., 120 Oh St, 273, at page 291,** the court approved the charge of the trial court in the following language:

"The charge of the court in the instant case on the measure of damages was entirely free from error:

" 'You may award such damages as you may think proportionate to the pecuniary injury resulting from the death to those for whose benefit the action was brought, that is to say, you may award such damages as the persons for whom this action is brought might reasonably have been expected to have received from the earnings of the deceased had he lived and from his estate at his death.'

"This charge was very carefully patterned after the provisions of §10772, GC. In actions for wrongful death, there are no definite standards for determining the amount which the beneficiaries might reasonably expect to receive, and the amount is purely matter of opinion, and in no sense matter of computation."

See also: **Cincinnati Street Ry. Co. v Altemeier, 60 Oh St, 10; Ellis v Twiggs, 32 C.C., 96; Traction Co. v Beebe, Admr., 3 Oh Ap, 213; Ochsner, Admr v Traction Co., 107 Oh St, 33.**

These cases also answer the objection to the charge of the trial court in submitting the measure of damages.

Another ground of error suggested by the plaintiff in error is, that the decedent was guilty of negligence in not investigating how much weight the floor could sustain, and if he failed in this, he was guilty as a matter of law of contributory negligence.

If the dangerous condition was obvious or patent, there would be merit in this contention. There is nothing, however, in the record to suggest any patent defect. The fact is that Tracy, the superintendent of power in the mill of the Power Company, testified that on the day in question, he and two other men had stood on the floor and it had withstood their weight. In support of this proposition, however, counsel cite and rely on the case of **Libbey Glass Co. v Gronau, 116 Oh St, 404.** This case, however, has no application to the case

under consideration. In the Libbey Glass Company case, Gronau went upon the roof to tighten some guy wires to a smokestack. The covering of the roof consisted of asbestos strips, which extended along the roof and were fastened to steel rafters, or furlines, underneath, which were about three feet apart. Because of the character of the roof, it became necessary for the workman engaged, in order not to fall through, to confine his steps to the more solid portions of the roof where the asbestos was cleated down to the furlines. Gronau, the plaintiff in the Libbey case, charged the Company with negligence in failing to make the roof safe for an employe to go upon for the repair work which Gronau was required to do, and in failing to warn Gronau of the condition of the roof. The Supreme Court, in a Per Curiam opinion, quotes from the testimony of Gronau as follows:

"Q. Well, as a matter of fact, it didn't look very solid to you, did it?
A. Well, it looked old.

Q. Now answer my question directly, please; it didn't look very solid either, did it?
A. No, sir.

Q. And you knew that before you started down, didn't you?
A. Yes, sir.

Q. And you had been told to be careful?
A. Yes, sir.

Q. And you now say you didn't think anything at all about the danger or safety of the place while you were on that roof?
A. No, sir.

Q. And notwithstanding that warning to be careful, and the fact you knew the roof looked old and not solid, you didn't think about your safety in any way whatsoever when you started down that roof, did you?
A. No, sir."

The foreman of the work testified that just before Gronau and a fellow workman went on the asbestos roof, he told Gronau to "watch your step" or "watch yourselves," and Gronau admitted that before starting up Casey had told him to be careful about the roof and cautioned him to be careful. He also testified that his fellow workman, Kramer, ascended the roof by taking what he called the safest way; that in descending, Kramer, his fellow workman, led the way, Gronau following. He testified that he started down after Kramer for a short distance upon the roof, but that in his descent, he deviated from the route that Kramer took, stepped to one side upon the asbestos

covering, and fell through to the ground below.

There is no evidence whatsoever in the case under consideration upon which to apply the decision in the Libbey Glass Company case.

Another ground of error suggested is the exclusion of a certain photograph of the room in question, offered by the defendant. Several photographs were introduced and submitted, and the submission of the photograph in question would have been merely cumulative. There was no abuse of discretion on the part of the trial court in excluding this photograph.

Error is also predicated upon the refusal of the trial court to give defendant's special charges Nos. 1 and 3.

In defendant's charge No. 1, refused, it is assumed that the flooring in question was a false flooring. While counsel frequently in the trial of the case used the term false flooring, the evidence does not bear out the claim that the floor was a false flooring, and in any event there is no explanation as to what service the false flooring would be put. It therefore assumes a fact which is not in the case ,and was properly excluded.

Defendant's special charge No. 3, refused, is as follows:

"If you find from the evidence that the Plaintiff's decedent's own knowledge of the danger surpassed or equaled that of the defendant's then you must return a verdict for the Defendant even though you should further find that the flooring of the defendant's boiler room was in an unsafe and dangerous condition and that by reason thereof the Plaintiff's decedent received the injuries Plaintiff complains of."

This charge was properly refused. It assumes that the decedent knew of the danger, of which there is no evidence whatsoever. If the decedent, knowing of the dangerous condition and weakness of the floor, and notwithstanding that knowledge, went upon the same, this would bar recovery. It is immaterial whether his knowledge was equal to that of the defendant or surpassed it, or was less, if he had knowledge of the danger, and notwithstanding that knowledge, went upon the floor, the recovery would be barred on the ground of contributory negligence.

The decedent owed no duty to inspect and was only bound to observe obvious or patent defects. Were the plaintiff in error's contention correct, every workman would be required to make detailed inspection of his place to work, and would overturn the rule that the employer must furnish a safe

place for the employe to work.

Our conclusion is that there is no prejudical error in the record, requiring a reversal of the case.

The judgment of the Court of Common Pleas is affirmed.

ROSS, PJ, and CUSHING, J, concur.