## McDONALD v GREAT ATLANTIC & PACIFIC TEA CO.

Ohio Appeals, 2nd Dist, Franklin Co

No 3337. Decided June 26, 1941

Arnold, Wright, Purpus & Harlor, Columbus; Earl F. Morris, Columbus, and H. B Arnold, Jr., of Counsel, Columbus, for defendant-appellant.

Carl H. Valentine, Columbus, for plaintiff-appellee.

## OPINION

By HORNBECK, J.

This is an appeal from a judgment in favor of the plaintiff in the sum of $3600.00, to which judgment but one error is assigned, namely, that the amount thereof is excessive.

We have carefully read the ecord and the briefs of the parties. The measure of damages was carefully and properly stated to the jury in the general charge. It is not claimed and there is not the slightest evidence, that the verdict was produced under the influence of passion and prejudice. The verdict was the unanimous action of the members of the jury, was reviewed by the trial court on the motion for new trial and supported.

The plaintiff, a young married man, 25 years of age, in the employ of the D. L. Auld Company as buffer and polisher, on the evening of November 16, 1939, while a customer in the store of defendant company, fell through a grating over a cold air register in the floor of the store, his foot and leg extending into the register up to about the knee. He suffered lacerations in the leg, struck his head on the floor as he fell and severely wrenched his back. On the night of the injury none of these results were noticed except the lacerations to the leg, but the next morning he was unable to get out of bed

On the night of the accident he consulted Dr. Masters, who treated the lacerations, advised him to go home, take a bath and come back the next day. The doctor later came to plaintiff's home, ordered him to his office, looked him over, took X-rays and instructed him to call another doctor, which he did in the person of Dr. Judson Wilson, and he was instructed to go to White Cross Hospital, where he remained for five or six days under severe treatment. After his stay in the hospital he was again examined by Dr. Wilson and instructed to go home. At all times he complained of pain in his back, headaches and inability to lift anything of any considerable weight. He testifies, and is supported by many lay witnesses, that the muscles came out on his back, on either side of the spine in places as large as a man's hand, stood out from the surface thereof and caused him to bend over so that he was then unable to straighten up.

There is an abundance of lay testimony to support this claim and further that his face was drawn and that he gave evidence of suffering and that he was incapable of doing sustained physical labor as he had been able to do before the injury and it is the testimony of the lay witnesses that this condition was continuing at the time of the trial in October, 1940. The plaintiff also testifies that he had to quit his work because of inability to carry on and, although his employer was on the stand, he was not interrogated as

to the reason why the plaintiff left his employ.

Upon the testimony of the doctors, those whom the plaintiff had consulted and another doctor who examined him on behalf of the defendant, they find no condition from the X-ray pictures, nor objective symptoms which explain or account for the physical condition nor the pain which the plaintiff and his lay witnesses definitely state he endured, after he left the hospital.

The doctors, however, do testify that when he was first seen at the hospital he was complaining of severe pain in his back, about midway between the hips and shoulders, tenderness over the 8th and 9th dorsal vertebrae, unable to bend his spine; that there was a spasm or hardness of the muscles of the back, his bending was limited and that he was unable to bend forward as one ordinarily could do; that he could not bend backward or in a position straight up and that an examination of the shin bone revealed a slight thickness without discoloration. The diagnosis was an acute back sprain and bruise over the shin bone. In the hospital, heat was applied to the back, a hard board was placed under him covered with bedding, both legs were taped and a weight attached to each leg to stretch the muscles to overcome the spasm. It is admitted that muscle spasm or tightness of a muscle is the result of irritation to a joint.

Unless we disregard the testimony of the lay witnesses, which was competent and probative and the credibility of which the jury had the right to determine, we may not reduce this verdict. Extended treatments wherein weights are pulling on feet and legs while the body is resting upon an inch plank are not conducive to ease of mind or body, and the evaluation alone of pain and discomfiture caused thereby could properly be fixed at a considerable sum. Unfortunately the treatment did not relieve the effects of the injury to the back, if the lay witnesses are to be believed.

We are not ready to say that this plaintiff is malingering nor that he is suffering delusions as to his physical condition.

We are committed in more than one decision to the proposition █ that lay testimony is competent to establish physical conditions, pain and suffering, if they are such as would come within the common observation of the layman.

In **Boze v Industrial Commission, 32 Abs 238**, lay testimony was offered not only to establish, in the main, the manner of decedent's injuries, but also the cause of death. There we said:

"In this case it is not necessary to go to the extent of holding that the lay testimony is sufficient to establish plaintiff's right to go to the jury. If, however, it was, it is of such force and effect that when the nature of cause of death appeared it would require that the case he submitted even if the medical expert had only expressed an opinion that the blow described was a possible cause of plaintiff's decedent's death."

See also **Village of Shelby v Claggett, 46 Oh St 549.**

We observe that plaintiff's counsel did not propound any question to plaintiff's doctors as to the permanency of his injuries. Why this was not done we do not know. It is evident that if the plaintiff was suffering from the distress which he and his witnesses described, the effect of his injuries will persist for considerable time in the future. We may not, however, upon this record, consider the permanency of his injuries. Likewise, we find no evidence as to his head injuries except that to which he testifies, but he says that he was treated in the hospital for this condition, much, if not all, of the time that he was there, and if this were not true it would have been susceptible of proof.

The amount of the judgment is not so manifestly excessive as █ to require that it be reduced. It will be affirmed.

GEIGER, PJ. and BARNES, J., concur.