PIERCE, Plaintiff-Appellant, v. GOODING AMUSEMENT COMPANY, Inc., Defendant-Appellee.

Ohio Appeals, Second District, Franklin County.

No. 4244. Decided October 17, 1949.

W. S. Lyman, Raglan R. Reid, Columbus, for plaintiff-appellant.

Knepper, White & Dempsey, William E. Knepper, Kline L. Roberts, of Counsel, Columbus, for defendant-appellee.

## OPINION

By HORNBECK, J.

The appeal is from a judgment on a directed verdict for the defendant at the conclusion of plaintiff's case in chief.

The petition averred and the answer admitted that plaintiff, together with a young child, for both of whom tickets

had been purchased, went upon a merry-go-round operated by the defendant. It was further alleged that after the merry-go-round had started and when it was revolving at a high rate of speed the plaintiff was thrown off and injured. The averment of the petition was, "Plaintiff further says that all of the injuries which she sustained as aforesaid were directly and proximately caused by the neglect of defendant, to wit: that the defendant company failed and neglected to keep the fixtures on the said merry-go-round on which plaintiff was riding securely fastened as a consequence of which one of the fixtures came loose, striking and throwing plaintiff off said merry-go-round, * * *." The answer, after admitting certain averments of the petition, plead that the plaintiff assumed the risk of her ride on the merry-go-round, and further, that the plaintiff fell or jumped from the merry-go-round to the ground. This last averment was denied in the reply.

The evidence of the plaintiff was to effect that she purchased a ticket for herself and the young baby, got onto the merry-go-round, placed the baby astride an outside horse, stood on the inside of the horse holding the baby on with her right hand and supporting herself by holding with her left hand to a pole which extended up and through the front part of the horse. She says that while in this position "this pole started wiggling and all at once something hit me and it knocked me off". On cross-examination she stated that although the pole did not come off it did not remain rigid but wiggled, and further, that it must have been the head of the horse which struck her suddenly and knocked her off. From a number of witnesses it appeared that when the merry-go-round started on the ride during which the plaintiff was injured, the horses were in the usual position headed with the circular track upon which they moved; that after the plaintiff left the ride the horse upon which the baby was riding and alongside which the plaintiff was standing was turned around, the head facing the inside and the tail the outside of the merry-go-round. A number of witnesses for the plaintiff saw the position of the horse before and after the accident and Carol Mickens, who was close to the merry-go-round, said that he saw the plaintiff hit the ground and answered affirmatively to this question: "You can't tell, but the horse came loose, and knocked her off?" It also appeared that the plaintiff watched the merry-go-round a short time before she boarded it.

The defendant at the conclusion of plaintiff's case moved for a directed verdict on the grounds that there had been a

failure of proof on the part of the plaintiff and in the alternative that if the court found that there was any evidence of negligence that it appeared as a matter of law that she was chargeable with contributory negligence.

The trial judge sustained the motion upon both grounds and in his opinion cites **Englehardt v. Phillips, 136 Oh St 73; Smith v. Puritan Springs Park Company, 26 Abs 505; Shadwick v. Hills, et al., 79 Oh Ap 143;** and 20 R. C. L. 56. This latter citation to effect that,

"The basis of liability" of an owner to an invitee on his premises for the purpose of amusement "is the owner's superior knowledge of existing dangers or perils to persons going upon the property. It is only when there are perils or dangers known to the owner and not known to the person injured that liability may be established and recovery permitted."

The court adverted to the fact that neither actual nor constructive notice of the unsafe condition of the merry-go-round was plead.

Our question is whether or not the trial judge was correct in holding that the evidence on behalf of the plaintiff in its most favorable light to her did not require the submission of her cause to the jury.

The questions presented may be considered under four headings:

(1) Proof of the negligence if specifically charged.

(2) The right of plaintiff to the benefit of the res ipsa loquitur doctrine.

(3) Assumed risk.

(4) Contributory negligence of the plaintiff.

(1) It is doubtful if the averment of negligence is specific. It is a general statement of all the occurrences leading up to plaintiff's injury of which she had knowledge. Although the petition charges that the defendant failed to keep the fixtures securely fastened, it does not state of what the specific negligence consisted, whether it was a failure to tighten a nut on a bolt, set a screw or do any other act which would have prevented the accident. There is no averment of notice to the defendant. Nor could there have been proof as to a failure to inspect or of any notice to the defendant or of its knowledge of a dangerous condition other than would be inferred from the occurrences alleged and the inferences to be drawn from them. There is some authority outside of

Ohio and at least one case in Ohio which would lend support to the conclusion that if the averment here was a charge of specific negligence the plaintiff made sufficient proof thereof to require the submission of her case to the jury.

It is evident that the plaintiff established the factual averment of her petition to the effect that "one of the fixtures, a horse, came loose, sriking and throwing plaintiff off said merry-go-round".

"The owner or proprietor of a place or instrumentality of public amusement is under legal duty to his patrons to discover and remedy defects or conditions which may be hazardous to them, and to inspect and test the premises and equipment properly and frequently to ascertain whether it is safe for patrons to use." 52 Am. Jur. 293; citing **Stephens v. Akron Palace Theatre Corp. 53 Oh Ap 434;** Durning v. Hyman, 286 Pa. 376, 53 A. L. R. 851.

"The owner or proprietor of a place of public amusement impliedly contracts that except for unknown defects not discoverable by reasonable means, the appliances intended for the use of patrons are safe." 52 Am. Jur. 293, and Durning v. Hyman, supra.

"Want of knowledge of an unsafe condition in the facilities of a resort, or of defects in the construction or materials of the amusement device, which by ordinary care and proper inspections and tests could have been discovered, whether the condition or defect was latent or apparent, does not relieve the owner or proprietor for injury resulting therefrom to a patron." 52 Am. Jur. 293, citing Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A. L. R. 840; Firszt v. Capitol Park Realty Co., 98 Conn. 627, 120 A. 300. 29 A. L. R. 17; Waddel v. Brashear, 257 Ky. 390, 78 S. W. (2d) 31, 98 A. L. R. 553.

If, however, the condition or defect was such that the proprietor was in no way responsible or of which he did not know, and which by the exercise of reasonable care and diligence he could not have discovered, he is not liable.

In Durning v. Hyman, supra, the plaintiff had entered a moving picture theater and placed herself upon a seat provided for the use of patrons. It broke and caused her to fall. The court held that the duty devolved upon the proprietor to show that reasonable diligence had been used to provide safe accommodations and that a proper inspection

was made to insure their suitable condition. In Stephens v. Akron Palace Theater Corp., supra, the plaintiff in attendance at the theater of the defendant tripped over a seam of the carpet at the top of stairs leading from the foyer of the theater to the first floor. The defendant insisted that it was not liable unless it had knowledge of such defect, or unless such defect had existed for a sufficient length of time to charge defendant with notice of said defect. The court in holding against this contention cited 1 Thompson on Negligence, 2nd Edition, 996:

"Such being the nature of the obligation, it is obvious that the proprietor of such a building is under a continuing duty of inspection, to the end of seeing that it is reasonably safe for the protection of those whom he invites to come into it; and that, if he neglects his duty in this respect, so that it becomes unsafe, the question of his knowledge or ignorance of the defect which renders it unsafe is immaterial."

There is analogy between the instant cause and **Hilleary v. Bromley, et al., 146 Oh St 212.** In this case the Supreme Court held, although not suggested in the lower courts, that the parties sustained the relationship of bailor and bailee to each other and that both being benefited by the transaction it became the bailor's duty to exercise ordinary care to make the chattel, the subject of the bailment, safe for its intended purpose, or to inform the bailee of any unsafe condition in the chattel which it was the duty of the bailor, in the exercise of ordinary care, to discover. We had held, **42 Abs 632,** that the trial judge committed no error in directing a verdict for the defendant. Among other specifications of negligence No. 1 was that the defendants were negligent in that they failed to furnish a ladder which plaintiff could use with safety. We had relied largely upon our conclusion that plaintiff did not prove that the claimed defect in the ladder was such that it should have been discovered by the defendant in the exercise of ordinary care. Or, in other words, that notice or knowledge by the defendants of the defect claimed was not shown by plaintiff's proof. The defendant offered no testimony because the jury was instructed at the conclusion of plaintiff's case and there was no showing by the plaintiff of failure to inspect. Judge Hart in the opinion of the Supreme Court said that the defendant claimed that the ladders had been inspected before they were delivered to plaintiff, but the record discloses **no evidence of any particular**

**inspection by any particular person.** (Emphasis ours.) Res ipsa loquitur was not involved in the case and this expression in the opinion leads to the conclusion that the defect appearing in the ladders raised an inference, at least, that they had not been inspected. The court cited Blakemore v. Bristol & Exeter Ry. Co. 8 E. & B., 1035, and Coughlin v. Gillison, 1 Q. B. 145, for the proposition that,

"such bailor is under obligation to use reasonable effort to anticipate danger by discovering defects which may exist in the chattel bailed."

Reliance was also placed on 1 Thompson, Commentaries on Law of Negligence (2 Ed.) 619, Section 679; Mayhew v. Sullivan Mining Co., 76 Me. 100; **Hozian, an Infant, v. Crucible Steel Casting Co., 132 Oh St, 453,** 9 N. E. (2d) 143, 112 A. L. R., 333, to the effect that the plaintiff, standing in the relationship of invitee of the defendants, was entitled to be protected from unreasonable risks resulting from the condition of disrepair of the ladder or its inadequacy for the purpose for which it was supplied, and also upon 2 Restatement of Torts, 1064, Section 392, which quotation see at pages 217 and 218 of the opinion. The obligation of the bailor as to the exercise of reasonable care to have a ladder which he provides bailee under contract is that he is chargeable if he knew or should have known, or from a careful examination could have known, of the defective condition. Page 220 of the opinion.

**Englehardt v. Phillips, etc., 136 Oh St 73,** was determined, in part, because there was insufficient showing that any conduct of the defendant involved unreasonable risk to the plaintiff. It also appeared that the plaintiff had as full knowledge of the unsafe condition of the premises as the defendant.

The plaintiff does not urge in this court that she made proof of specific negligence or as error the failure of the trial judge to submit this question to the jury. The defendant claims specific negligence is pleaded but not proved. Assuming that specific negligence is not proven prima facie, we are satisfied that upon the facts adduced the plaintiff had the right to go to the jury upon the application of the rule of res ipsa loquitur.

All of the elements of the doctrine appear in this record. The instrumentality which produced the injury was under the sole control and management of the defendant. The means of explaining the accident, if it occurred as testified by the plaintiff, was within the knowledge of the defendant and the

extent, sufficiency and timeliness of inspections of the device obviously could be known only to the defendant. Upon the facts adduced the accident is one which the jury could have found would not have occurred had the defendant used ordinary care to maintain the merry-go-round in a safe condition. The plaintiff, therefore, was entitled to the benefit of the inference of the negligence of defendant which the jury may have drawn by the showing of the happening of the accident and the manner in which it occurred.

In Eldred v. United Amusement Co. (Ore.) 2 Pac. (2d) 1114, it was held that where a safety chain gave way on a device known as "Merry-Mix-Up" proof of this fact invoked the res ipsa loquitur rule, as did the breaking of a stirrup on a wooden steeplechase horse, Reinzi v. Tilyou, (N. Y.) 169 N. E. 101, and the breaking of an iron pipe on a rail along which a mechanical horse travelled, Greenberg v. Steeplechase Amusement Company, 291 N. Y. Supp. 512, and the failure of a moving belt to function properly, Murphy v. Steeplechase Amusement Company, (N. Y.) 166 N. E. 173, and a break in cable, Firszt v. Capitol Park Realty Company, 29 A. L. R. 29.

But it is said that the plaintiff having plead a specific act of negligence on the part of the defendant, may not rely upon the res ipsa doctrine. This court has recently, in the case of **Shadwick v. Hills, et al., etc., 79 Oh Ap 143,** held against the claim of the plaintiff, who had secured a judgment, that she was entitled to the benefit of the res ipsa loquitur rule in her behalf when there were specific charges of negligence in the petition and the cause had been submitted upon that theory. We are of opinion that our judgment was correct in this case because at no time before the cause reached our court on appeal was it indicated by the plaintiff that any reliance was placed upon the doctrine. Specific charges of negligence were averred and sufficient proof made as to these charges to carry the case to the jury. The pronouncement in this case is supported by **Glowacki, a minor, v. N. W. Ohio Ry. & Power Company, 116 Oh St 541,** first syllabus, and **Beeler v. Ponting, 116 Oh St 432.**

We appreciate also that in **Fink v. New York Central Ry., 144 Oh St 1,** and **Hiell v. Golco Oil Company, 137 Oh St 180,** the plaintiffs relied entirely upon the res ipsa loquitur rule and no specific averments of negligence were involved. Therefore the pronouncement of Judge Bell in the former case at page 7 was obiter, "that if the allegations of the petition and the proof in support thereof call for the application of the rule res ipsa loquitur it should be applied irrespective of

whether the petition contains allegations of specific acts of negligence". But the statement seems to be well supported by other adjudications.

It is said that res ipsa loquitur, being a rule of evidence, need not be pleaded. Fundamentally, this is true but the opposing party and the court must determine from the petition and the nature of the averments whether or not the plaintiff in the first instance is depending upon res ipsa and when the proof is in, if specific averments have been made. the trial judge must determine if there is proof tending to establish one or more of such averments. If the plaintiff, having charged specific negligence, makes sufficient proof to go to the jury there is no necessity of invoking the res ipsa doctrine which would accomplish no more than the plaintiff is already entitled to by her specific proof. **Soltz v. C. R. Center, 151 Oh St 511; Winslow v. The Bus Co., 148 Oh St 101; Welch v. Rollman & Sons Co. 70 Oh Ap 515, 36 Abs 610.**

(3) But it is urged that the plaintiff assumed the risk of the accident which occurred. The plaintiff assumed only such risks as were inherent in the amusement, not the risk of injury by the proprietor's negligence. 52 Am. Jur. 300. It appears that the plaintiff had opportunity to observe the operation of the merry-go-round before she went upon it. But there is nothing in the record from which it may be inferred that when she went upon the device she had any reason to know that it was not in normal working condition. She did not assume the risk which arose by the dangerous condition caused by the loose pole and horse which developed, in so far as she knew, after the merry-go-round had started.

(4) But it is said that the plaintiff is chargeable with contributory negligence as a matter of law. We readily concede that because of some unusual circumstances appearing, namely, the fact that the plaintiff was a short person, very heavy, and that she was taking a young baby on the merry-go-round, and placed it upon a horse and stood alongside it herself, instead of taking her place in a stationary seat provided, there is presented a factual question for the jury whether or not she was chargeable with negligence contributing to her injury. Plaintiff was an athletic type of person and the jury may have been of opinion that had the device operated in a normal manner she was neither subjecting herself nor the baby to any unusual danger in the manner in which she rode on it.

However, if she is to be charged with negligence it does not follow as a matter of law because on her case it does not

appear that she had notice that there was anything unsafe in any part of the amusement device before she entered upon it. The record does not disclose that there was any instability in the horse upon which she placed the child nor in the pole which she held until shortly before the time that she was thrown from the merry-go-round.

The judgment will be reversed and cause remanded.

MILLER, PJ, and WISEMAN, J, concur.