Richard H. JONES, Administrator of the Estate of John C. Lobach, Plaintiff-Appellee-Cross-Appellant,

v.

WITTENBERG UNIVERSITY et al., Defendants-Appellants-Cross-Appellees (two cases).

Nos. 75–1459, 75–1460.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1975.

Decided April 22, 1976.

Leo F. Krebs, Bieser, Greer & Landis, Dayton, Ohio, for appellant in No. 75–1459 and appellee in No. 75–1460.

James E. Beasley, Philadelphia, Pa., for appellees in No. 75–1459 and appellants in No. 75–1460.

Before PHILLIPS, Chief Circuit Judge, and CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from a jury verdict for Appellee in an action under Ohio's Wrongful Death Act and survival statute brought within the District Court's diversity jurisdiction. 28 U.S.C. § 1332 (1970).[1] The jury found Appellants Wittenberg University and Chester Phillips, liable for decedent's death and injuries and awarded $27,000 damages in the wrongful death action and $100,000 damages for pain and suffering in the survival action. Decedent's estate was also awarded $1,331.72 for funeral expenses. The District Judge conditioned an order denying a motion for a new trial on Appellee's acceptance of a $50,000 remittitur of damages in the survival action. Appellee accepted the remittitur "without prejudice" to his right of appeal. Appellee has filed a cross-appeal from the remittitur and from other rulings of the trial court with respect to damages recoverable in the survival action.

This case arose out of the shooting death of John Lobach, hereinafter referred to as decedent, a student at Wittenberg University, on May 10, 1969 by Chester Phillips, a security guard employed by the university. The incident began at 2:40 a. m. when Phillips and Frank Lytle, university security guards, discovered decedent on a second story ledge of a women's dormitory on campus. He descended when ordered to do so by the guards and was placed in custody. Under interrogation at the scene the decedent explained that he was there to meet a girl he had met earlier in the evening and

1. Plaintiff-Appellee is the administrator of decedent's estate and a resident of Pennsylvania. Wittenberg University, the Defendant-Appellant, is an Ohio corporation and its co-Defendant, Chester Phillips, is a resident of Ohio.

who had invited him up. He gave a false name and informed them that he was a local high school student. The security guards were hesitant to place the decedent under arrest. Although they had radio contact with the local police, they did not report the incident. No attempt was made to ascertain what, if anything, had occurred in the dormitory. Instead, they placed decedent in the backseat of the patrol car and drove around the campus looking for a supervisor to make the decision whether or not to place decedent under arrest. Decedent was not searched though a search would have disclosed that he was carrying correct identification. He was not handcuffed, according to guard Frank Lytle, because to handcuff him would mean that he was under arrest. After driving around for a half hour they returned to the dormitory and Lytle went inside to talk with the housemother. While he was inside he heard two shots being fired.

The only direct testimony on the shooting came from Chester Phillips, the security guard who fired the fatal shot.[2] He testified that decedent bolted from the car ignoring several orders to "halt" and only sped up after he fired the first warning shot in the air. He testified that he then fired a second shot at the ground in the general direction of decedent's feet. Phillips claimed that he was not aiming at decedent and had no intention of wounding him. He assumed that he had missed and decedent had escaped when he heard the sound of something hitting a parked car. Phillips raced to the spot and found decedent's body sprawled on the ground. The second shot had pierced his chest. A thirty to forty yard trail of blood indicated that decedent had run that distance after being struck by the bullet.

Since jurisdiction in this case is based upon diversity of citizenship, substantive legal questions are governed by state law.

See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Appellee derives his right of action from two related Ohio statutes, the Wrongful Death Act, Ohio Rev.Code § 2125.01 (1968), and survival statute, Ohio Rev.Code § 2305.21 (1968). Although both these provisions are triggered by an individual's death, they create distinct causes of action designed to accomplish divergent statutory purposes. See May Coal Co. v. Robinette, 120 Ohio St. 110, 165 N.E. 576 (1926). See generally 16 O.Jur.2d Death § 36 (1971).

The section creating an action for wrongful death provides:

When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the corporation which or the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances which make it murder in the first or second degree, or manslaughter.

Rev.Code § 2125.01. Although wrongful death actions must be brought in the name of the personal representative of the deceased, the action is "for the exclusive benefit of the surviving spouse, the children and other next of kin of the decedent." Rev. Code § 2125.02. Wrongful death actions are designed to recompense a decedent's beneficiaries for any "pecuniary injury" they may have suffered by virtue of his untimely death. Id. Survival actions, by contrast, are not concerned with the wrong to the beneficiaries but with the wrong to the injured person. The survival statute provides that any cause of action which a person would have for personal injury during his lifetime survives his death and may be brought on behalf of his estate.[3] The

---

2. Mr. Phillips did not appear at the trial and his testimony was received by deposition.

3. In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

Rev.Code § 2305.21.

same act may provide a basis for an action in tort saved by the survival statute and an action for wrongful death if the injuries sustained thereby result in a person's premature death. *See e.g., Hillard v. Western & Southern Life Ins. Co.,* 68 Ohio App. 426, 34 N.E.2d 75 (Ct.App. Allen Co. 1941). *See generally* 1 O.Jur.2d *Abatement* § 39 (1953).

The trial below was bifurcated. Along with instructions on the question of liability, the District Judge submitted a list of special interrogatories to the jury. These interrogatories reflected the various theories of counsel and were designed to disclose the bases for the jury's verdict. After finding Appellants liable for the wrongful death of the decedent and for the conscious pain he suffered prior to his death, the jury answered the following written interrogatories:

1. Do you find that the death of John Lobach was caused by the wrongful act of defendant Chester Phillips?
 Yes No X

2. Do you unanimously find that the death of John Lobach was caused by the negligence of defendant Chester Phillips?
 Yes X No

3. Do you unanimously find that the death of John Lobach was caused by the default of defendant Chester Phillips?
 Yes X No

4. Do you unanimously find that John Lobach assumed a known risk as defined to you in charge 5084.2?
 Yes No X

5. Do you unanimously find that John Lobach suffered conscious pain prior to his death?
 Yes X No

6. Do you unanimously find that the conscious pain suffered by John Lobach prior to his death resulted from an assault and battery upon him as defined in charge 5924 by defendant Chester Phillips?
 Yes No X

7. Do you unanimously find that the conscious pain suffered by John Lo-

bach prior to his death was a proximate result of the negligence of Chester Phillips?
Yes X No

8. Do you unanimously find that John Lobach assumed a known risk as defined for you in charge 5084.2?
 Yes No X

The answers to the interrogatories disclose that the jury found that the decedent's injuries were caused by the negligence of Chester Phillips, the security guard who fired the fatal shot. Wittenberg University, having stipulated that Mr. Phillips was acting within the scope of his employment at the time of the shooting, was held liable for his negligence under the theory of respondeat superior.

■■■ Appellant contends that the jury's finding of negligence is contrary to the weight of the evidence because Phillips' uncontroverted testimony was that he intended to shoot in the direction of the fleeing student, although he did not intend to wound him. Appellant argues that a finding of negligence may not be grounded on a wilful and intentional act. However, this argument overlooks the principle of tort law that an intentional act may be so negligently performed that it results in civil liability for the actor. To a degree all negligent conduct is intentional in that it is *voluntary.* Even though injury may be unintended, the act which lead to the injury to be actionable negligence must be the product of the actor's will.

To constitute negligence the conduct involved, be it act or omission, must be voluntary conduct. This does not mean that the actor intended the injurious result of his conduct or intended that it should produce some intermediate result which ultimately brought about the injury. The requirement is not that any particular state of mind must accompany the act, but simply that the act or omission itself be a conscious manifestation of the actor's will. Thus . . . the bodily movement or rest of a man asleep or in a

trance will not itself constitute negligence.

2 F. Harper & F. James, The Law of Torts § 16.1 at 901–02 (1956). The voluntary act of firing a pistol is an intentional act, even though harm was not intended, but it may constitute negligence if it was done so carelessly as to result in foreseeable injury. *See Gearhart v. Angeloff*, 17 Ohio App.2d 143, 244 N.E.2d 802 (Ct.App. Summit Co. 1969). *See also, Young v. Kelley*, 60 Ohio App. 382, 21 N.E.2d 602 (Ct.App. Auglaize Co. 1938). In this case Phillips testified that the second shot which struck decedent was meant to be a warning shot which was fired at the ground in decedent's direction rather than in the air as the first shot had been. Based on this testimony the jury could reasonably find that decedent's death was caused by Phillips' negligent firing of the second warning shot.

 Appellants further argue that the jury's answers to the interrogatories are inconsistent with a finding of liability. Appellants conclude that the jury impliedly found that the force used by Chester Phillips was not unreasonable under the circumstances. This conclusion is tenuous at best, based on unfounded assumptions and faulty premises, and contradicts the jury's express finding that the decedent's death was caused by Phillips' negligence. In Ohio any person who has reasonable grounds to believe a felony has been committed may detain a suspect until a warrant may be obtained. Rev.Code § 2935.04. A police officer may accomplish this detention by the use of "reasonable force".[4] *See Clark v. Carney*, 71 Ohio App. 14, 42 N.E.2d 938 (Ct.App. Hamilton Co. 1942). However, it is well established under Ohio law that a police officer may be held personally liable where use of excessive force *or negligence* results in personal injury or death. *See e.g., Skinner v. Brooks*, 74 Ohio App. 288, 58 N.E.2d 697 (Ct.App. Hamilton Co. 1944); *Clark v. Gurney, supra; Young v. Kelley, supra. See generally* 43A O.Jur.2d *Police*

§ 8 (1973); 44 O.Jur.2d *Public Officers*, § 81 (1960). *Cf.* 41 A.L.R.3d 700. An allegation that an officer had reasonable grounds to believe a felony had been committed and that reasonable force was used in detaining a suspect is an affirmative defense to a charge of assault and battery by way of justification for the force employed. *See Skinner v. Brooks, supra.* However, even a justifiable use of force will not insulate an officer from liability if this otherwise justifiable conduct is negligently performed. Phillips may have been justified in firing a warning shot to frighten the fleeing decedent but if that shot was fired so carelessly as to negligently injure the suspect he may be held liable for damages. The jury's verdict in this case reflected the state of the evidence and applicable state law. The responses to the interrogatories were entirely consistent with the finding that Phillips' negligence caused the decedent's injuries and death.

 The District Judge did not charge the jury on the issue of contributory negligence although he did instruct them as to assumption of risk. This was not error. In Ohio, contributory negligence is ordinarily a question for the jury. *See e.g., Rothfuss v. Hamilton Masonic Temple Co.*, 34 Ohio St.2d 176, 297 N.E.2d 105 (1973). However, a court in a wrongful death action may refuse to charge on the issue of contributory negligence if there is no evidence tending to establish it. *See Cincinnati Traction Co. v. Cahill*, 16 Ohio App. 496 (Ct.App. Hamilton Co. 1923); *Arras v. Baltimore & O. R. Co.*, 20 CC(NS) 387 (Cir.Ct. Richland Co.), *aff'd* 89 Ohio St. 420, 106 N.E. 1045 (1913). *See also Pittsburgh C. & St. L. R. Co. v. Fleming*, 30 Ohio St. 480 (1876). *See generally* 39 O.Jur.2d *Negligence* § 219 (1959).

 Phillips' uncontroverted testimony was that decedent bolted from the patrol car and fled custody despite Phillips' order to "halt" and the firing of a warning shot.

---

4. There was a controversy at trial whether Chester Phillips, as a private security guard, was a police officer entitled to use reasonable force in detaining a suspect. Although this issue was not presented to the jury or resolved by the court, we assume for purposes of decision that Phillips was a police officer with authority to arrest and detain a felony suspect.

While decedent's flight may have been an exercise in faulty judgment, it does not constitute negligent conduct. The trial judge was correct in concluding that the circumstances were more appropriate for instruction on assumption of risk rather than on contributory negligence. Although contributory negligence and assumption of risk may overlap in appropriate cases, *see e.g., Centrello v. Basky,* 164 Ohio St. 41, 128 N.E.2d 80 (1955), they are separate and distinct defenses. *See Porter v. Toledo Terminal Rd. Co.,* 152 Ohio St. 463, 90 N.E.2d 142 (1950). *See generally* 39 O.Jur.2d *Negligence* § 83 (1959). *See also* 82 A.L.R.2d 1218. It is often said that assumption of risk is based on "venturousness" and contributory negligence on "carelessness" *See Dunn v. Higgins,* 14 Ohio St.2d 239, 237 N.E.2d 386 (1968); *Porter v. Toledo Terminal Rd. Co., supra.* Decedent's flight was a deliberate attempt to escape custody and was not the sort of careless conduct which one generally associates with negligence. Since there was no evidence tending to establish negligence on the part of decedent it was not error to refuse a charge on contributory negligence.[5]

The jury found that decedent had not assumed the risk that he would be injured by Phillips' negligently fired warning shot. Appellants contend that they were entitled to a judgment that the decedent assumed the risk of being shot as a matter of law. The question of assumption of risk is ordinarily for the jury to determine in light of all the facts and circumstances of the case. *See e.g., Wever v. Hicks,* 11 Ohio St.2d 230, 228 N.E.2d 315 (1967). It is only when reasonable minds can come to but one conclusion that the assumption of risk issue becomes one for the court. *Id.* Such was not the case here, particularly in view of the fact that decedent was not placed under arrest. The only direct testimony on the shooting came from the defendant, Chester Phillips. His credibility and the accuracy of his reporting of the events which led to decedent's death were issues for the jury to decide. More importantly, however, assumption of risk arises only if the danger is so obvious that one is presumed to have assumed a known risk. *See Briere v. Lathrop Co.,* 22 Ohio St.2d 166, 258 N.E.2d 597 (1970). Normally one is not bound to anticipate another's negligence. *See Motorists Mut. Ins. Co. v. Walker,* 26 Ohio Misc. 169, 265 N.E.2d 836 (Dayton Mun.Ct. 1970). *See generally* 39 O.Jur.2d *Negligence* § 94 (Supp.1974). It is for that reason that Ohio courts have held that the doctrine of assumption of risk cannot be applied if the negligence of an individual, which the injured party could not have foreseen or expected, was the proximate cause of his injury. *See Moran v. Hines,* 115 Ohio St. 226, 152 N.E. 664 (1926); *Pierce v. Gooding Amusement Co.,* 55 Ohio Law Abst. 556, 90 N.E.2d 585 (Ct.App. Franklin Co. 1949). One cannot be held to assume the risk of subsequent negligence. *See Mainfort v. Giannestras,* 67 Ohio Law Abst. 380, 111 N.E.2d 692 (Ct. of Common Pleas Hamilton Co. 1951). *See generally* 39 O.Jur.2d *Negligence* § 82 (1959). Decedent should not be deemed to have assumed the risk of injury from the negligently fired warning shot as a matter of law when even Phillips who fired the shot could not have anticipated its striking decedent.

Appellants also argue that Appellee has not borne the burden in the survival action of proving by expert medical testimony that decedent sustained conscious pain and suffering during the period between the shooting and his death. Under Ohio law, lay persons may reach conclusions on matters within their common experience

---

5. Our decision on *Domany v. Otis Elevator Co.,* 369 F.2d 604 (6th Cir. 1966), is inapposite. There we found that the Judge committed error in not submitting the issue of contributory negligence to the jury. From evidence at trial, the *Domany* jury could have drawn the inference that Plaintiff's own negligence in failing to grab a handrail contributed to her injuries when she fell as the escalator stopped short. In this case there is no dispute about decedent's conduct. The uncontroverted evidence was that decedent was shot while trying to escape from custody. Thus there were no competing inferences of fact to be drawn by the jury which would suggest contributory negligence.

absent expert testimony. *See e. g., McDonald v. Great Atlantic & Pacific Tea Co.,* 34 Ohio Law Abst. 380, 37 N.E.2d 432 (Ct. App. Franklin Co. 1941). The evidence unquestionably demonstrates that decedent ran approximately forty yards after being shot. From this the jury could reasonably conclude from their common experience that decedent was conscious during that period and experiencing pain and suffering from the gunshot wound. *See also Pet. of United States Steel Corp.,* 436 F.2d 1256, 1275–76 (6th Cir. 1970).

■ At trial the District Court admitted evidence of Chester Phillip's background including testimony by two doctors who had treated him for physical and emotional distress over a period of years. Both doctors agreed that Phillips was suffering from an "anxiety reaction" which was manifested in a chronic state of nervousness, general irritability toward people, and an inability to cope with stress. At the time this evidence was presented it was relevant to at least two issues at trial: the negligence of the university in hiring someone with Phillips' background as an armed security guard, and the availability of punitive damages. Subsequently both of these issues were removed from the case,[6] and defense counsel motioned that all evidence of Phillips' employment background and physical and mental disability be stricken from the record as irrelevant to any remaining issues. The motion was denied. Admittedly much of this evidence had become irrelevant at this stage of the case,[7] but the evidence of Phillips' psychological disability continued to be relevant to two issues remaining in the case: (1) Phillips' mental state at the time of the shooting, and (2) his credibility as the sole eyewitness.

■ Normally evidence of an actor's subjective state of mind is irrelevant to the issue of negligence because his conduct is evaluated according to the objective standard of a "reasonably prudent person under the circumstances." *See e. g., Gedeon v. East Ohio Gas Co.,* 128 Ohio St. 335, 190 N.E. 924 (1934). *See generally* 39 O.Jur.2d *Negligence* §§ 16–17 (1959). In this case, however, the jury had to determine whether Phillips consciously intended to shoot decedent. If the shooting was intentional or reckless his conduct would constitute an assault and battery and not simple negligence. *See Williams v. Pressman,* 69 Ohio Law Abst. 470, 113 N.E.2d 395. (Ct.App. Cuyahoga Co. 1953); *De Lisa v. Scott,* 47 Ohio App. 503, 192 N.E. 174 (Ct.App. Summit Co. 1934). Evidence of Phillips' state of mind at the time of the shooting was relevant to the scienter element of assault and battery under Ohio law. *See generally* 5 O.Jur.2d *Assault & Battery* § 5 (1954). If the jury had determined that Phillips intended to shoot decedent, recovery would have been barred by the running of the statute of limitations for assault and battery actions. Evidence of Phillips' state of mind might also be relevant to his credibility, *i. e.,* his ability to make critical judgments concerning the actual events and circumstances surrounding this case.[8] *See generally* McCormick, Evidence § 45 (2d ed. 1972). Since evidence of Phillips' mental state had continued relevancy to issues remaining in the trial, its admission was not reversible error.

---

6. The negligent hiring issue was removed from the case by Wittenberg University's admission that Chester Phillips was acting within the scope of his employment at the time of the shooting. This meant that the University assumed automatic liability should Phillips be found negligent. This obviated the necessity of Plaintiff proving that the university was separately liable for negligently hiring Phillips. The punitive damage issue was removed from the case when the Judge determined that the statute of limitations had run on assault and battery and that punitive damages were not recoverable in Ohio for negligence.

7. Much of the evidence admitted at trial dealt with Phillips employment history and his service record. While this evidence lost its relevancy when the negligent hiring issue was removed from the case, the evidence was not so prejudicial to Appellants' case that its admission constitutes reversible error.

8. The new Federal Rules of Evidence became effective on a date subsequent to the trial below.

Both parties charge error in the award of damages. Appellants contend that the damages awarded in both actions are excessive and against the weight of the evidence. In the cross-appeal Appellee argues that the jury's award of damages in the survival action should be reinstated, that the trial court erred in applying the law of Ohio rather than Pennsylvania to the amount of damages, and that punitive damages were recoverable in the survival action.

 Damages are awarded in actions under the Ohio Wrongful Death Act, Rev. Code § 2125.02, to compensate a decedent's beneficiaries for any "pecuniary injury" they may have suffered by virtue of decedent's untimely death. See Karr v. Sixt, 146 Ohio St. 527, 67 N.E.2d 331 (1946). The concept of pecuniary injury is prospective as well as immediate and includes pecuniary benefits which the beneficiaries might reasonably expect to derive in the future had it not been for decedent's premature death. See id. See generally 16 O.Jur.2d Death § 119 (1971). The jury awarded decedent's father $20,000 in damages in the wrongful death action and the sister with whom he had lived was awarded $7,000 damages. Another sister and brother were found not to have suffered any pecuniary injury and were not awarded damages. Appellants claim that the damages awarded in the wrongful death action are without foundation because neither of the recognized beneficiaries made a concrete showing of pecuniary loss. Appellants place particular emphasis on the lack of any legal duty of support owing from decedent to his beneficiaries. However, legal obligation to support is only one of a number of factors which Ohio courts have recognized as matters which a jury can consider in awarding damages in wrongful death actions.[9] See Smith v. Cushman Motor Delivery, 54 Ohio App. 99, 6 N.E.2d 594 (Ct.App. Hamilton Co. 1936). Due to the speculative nature of the injury and the myriad factors to be considered, courts generally defer to a jury's opinion on the existence or amount of pecuniary injury. See Blasky v. Wheatley Trucking, Inc., 482 F.2d 497, 499 (6th Cir. 1973). See also Chester Park Co. v. Schulte, 120 Ohio St. 273, 291, 166 N.E. 186 (1929); Paul A. Sorg Paper Co. v. Hayes, 43 Ohio App. 140, 182 N.E. 886 (Ct.App. Butler Co. 1932). See generally 16 O.Jur.2d Death § 119 (1971). A review of the evidence convinces us that there was a factual basis for the jury's finding that decedent's father and sister suffered some pecuniary loss by his death. Appellants claim that the amount of loss suffered, if any, was nominal and that the awards were clearly excessive. A jury's verdict in a wrongful death action in Ohio will generally not be set aside unless it is "so excessive that it could not have been arrived at except as a result of passion or prejudice." Cincinnati Traction Co. v. Cahill, supra at 498. The fact that the jury awarded damages to only two of the four survivors who claimed injury would appear to rebut a charge that the jury's award in the wrongful death action was arrived at as a result of passion or prejudice. In federal court, a jury's award will not be reduced as excessive unless it is beyond the maximum that the jury could reasonably find to be compensatory for a party's loss. See Manning v. Altec, Inc., 488 F.2d 127, 132 (6th Cir. 1973). Under this standard, we cannot hold that the award of $27,000 in the wrongful death action was excessive.

 The jury also awarded $100,000 damages for pain and suffering in the survival action. The court conditioned denial of a new trial motion on Appellee's acceptance of a remittitur of $50,000. Appellee accepted the remittitur under protest. On cross-appeal, Appellee challenges the propriety of the remittitur and seeks the reinstatement of the original award. In this circuit the appealability of an order of remittitur is determined by state law under the principles of Erie Railroad Co. v. Thompkins. See Mooney v. Henderson Portion Pack Co., Inc., 334 F.2d 7, 8 (6th Cir. 1964). See also Manning v. Altec, Inc.,

---

**9.** For a discussion of other factors which a jury may consider in awarding damages for wrong- ful death see 16 O.Jur.2d Death §§ 125 et seq. (1971).

*supra* at 131. In Ohio, absent a showing that verdict was tainted by passion or prejudice, a remittitur which has been accepted by a plaintiff may only be set aside upon a showing of an abuse of discretion. *See Burchfield v. Omar, Inc.,* 72 Ohio Law Abst. 467, 135 N.E.2d 703 (Ct.App. Hamilton Co. 1954). *See generally* 3 O.Jur.2d *Appellate Review* § 799 (Supp.1975). In *Brewer v. Uniroyal, Inc.,* 498 F.2d 973, 977 (6th Cir. 1974), we restated our view that a remittitur will only be reversed where the damages found by the jury were clearly within the maximum limit which a jury could find to be compensatory for decedent's loss. *Accord, Manning v. Altec, Inc., supra* at 131–33. Applying this standard, we conclude that the District Court did not abuse its discretion in ordering the remittitur. In survival actions for personal injury, damages are recoverable for pain and suffering accruing during a lifetime, the fact that death resulted from the injuries is not a relevant factor to be considered in the computation. *See Hillard v. Western & Southern Life Ins. Co.,* 68 Ohio App. 426, 34 N.E.2d 75 (Ct.App. Allen Co. 1941). The District Court could reasonably have concluded from the evidence that the $100,000 originally awarded by the jury exceeded the maximum which could reasonably be recovered by decedent for the short period of pain which he endured prior to his death. The adjusted award of $50,000 in the survival action amply compensates decedent's estate for his loss.

 The District Court also was correct in applying Ohio rather than Pennsylvania law to the amount of damages recoverable in the survival action. In diversity cases, district courts must apply the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Ohio choice of law rule for the computation of damages was most recently enunciated in *Fox v. Morrison Motor Freight, Inc.,* 25 Ohio St.2d 193, 267 N.E.2d 405 (1971). In that case the Ohio Supreme Court rejected a mechanical application of the rule of *lex loci delicti* and instituted an interest analysis to determine the proper law for computation of damages.

The balance struck in the *Fox* case was in favor of the Ohio law for computation of damages since Ohio was the state with the more substantial government interest in the litigation. Here, we conclude that Ohio has the paramount interest in determining how damages are to be computed in the survival action. The incident occurred in Ohio. The defendants are residents of Ohio. Ohio law was the source of Appellant's right of action and suit was brought within the diversity jurisdiction of a district court sitting in Ohio. While Pennsylvania does have an interest in the proper administration of decedent's estate, Ohio's interests are more intimately linked with this law suit and its law of damages is the more appropriately applied. *See Schiltz v. Meyer,* 29 Ohio St.2d 169, 280, N.E.2d 925 (1972).

 We find no error in failing to instruct the jury on the issue of punitive damages. Ohio courts deny punitive damages for mere negligence. *See e. g., Petrey v. Liuzzi,* 76 Ohio App. 19, 61 N.E.2d 158 (Ct.App. Hamilton Co. 1945). Although some courts have awarded punitive damages where the defendant's conduct is so gross that malice may be implied, *see e. g., Gearhart v. Angeloff, supra,* such conduct is tantamount to an assault and battery which was barred by the statute of limitations. Since Appellee's case went to the jury on a theory of simple negligence, he was not entitled to an instruction on punitive damages.

The parties have made various other arguments which we have considered and find to be without merit. Accordingly, the judgment of the District Court and its award of damages is affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent because this appeal presents a critical procedural issue, the proper resolution of which might deprive us of jurisdiction.

A trial court, as a condition of entering judgment upon a verdict, may require a remittitur of an amount determined to be excessive. Usually, a plaintiff, faced with the option of agreeing to a remittitur or

having the verdict set aside and a new trial ordered, must make an unequivocal choice. If he refuses to accept the remittitur, a new trial is ordered. Of course, no appeal may be taken from an order requiring a new trial, because such an order is not regarded as a final order under 28 U.S.C. § 1292(a). *Wagner v. Burlington Industries, Inc.,* 423 F.2d 1319, 1321 (6th Cir. 1970), *Ford Motor Co. v. Busam Motor Sales, Inc.,* 185 F.2d 531, 533 (6th Cir. 1950). If plaintiff elects to agree to the remittitur, the defendant may appeal from the judgment.

In this appeal, plaintiff sought to have his cake and eat it too by agreeing to accept the remittitur without prejudice to his right to appeal from the trial court's determination that the jury's verdict was excessive. The majority opinion, following Ohio law, determines that the district court did not err in ordering remittitur because it did not abuse its discretion. If the question whether Ohio law applies were open, I would hold that the reviewability of a remittitur is to be determined according to federal instead of state law, because I regard the question as a procedural matter. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) and *Dorin v. Equitable Life Assurance Society of the United States,* 382 F.2d 73 (7th Cir. 1967). However, I regard our decisions in *Mooney v. Henderson Portion Pack Co.,* 334 F.2d 7 (6th Cir. 1964) (decided before *Hanna v. Plumer, supra*) and *Manning v. Altec,* 488 F.2d 127 (6th Cir. 1973) (not discussing the effect of *Hanna v. Plumer* on *Mooney*) as foreclosing the possibility of following federal law.

I believe that under the applicable Ohio law the district court erred. I am unable to find any Ohio cases permitting a plaintiff to conditionally accept a remittitur with the reservation of the right to appeal. To the contrary, the Ohio courts have followed the common law rule that a party who accepts a remittitur is bound by his election and cannot later complain about it in an appellate court. *Iron Railroad Co. v. Mowery,* 36 Ohio St. 418 (1881), *Damages—Remittitur—Appeal,* 16 A.L.R.3d 1327 (1967).

If the district court had required plaintiff to make an unconditional election, this appeal might not have been before us, and it would have been unnecessary to decide the perplexing question whether the general Ohio one-year statute of limitations for assault and battery governs a wrongful death resulting from an assault, or whether the two-year wrongful death statute of limitations governs all wrongful death claims whether or not the death was unintentional.

I believe the better course would be to remand this case to the district court with instructions to require plaintiff to make an unconditional election and to take such action as then appears appropriate.