**Leanna JACO, individually and as administratrix of the estate of Carl D. Storer, deceased, Plaintiff-Appellant,**

v.

**Jerry G. BLOECHLE, et al., Defendants-Appellees.**

No. 82–3757.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 23, 1984.

Decided July 24, 1984.

Brian D. Weaver (argued), Thornburgh, Ferguson, Radabaugh & Weaver, Dayton, Ohio, for plaintiff-appellant.

Lee C. Falke, Michael Russell (argued), Dayton, Ohio, for defendants-appellees.

Before KEITH and KRUPANSKY, Circuit Judges, and WEICK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

In this appeal from the Southern District of Ohio, Western Division, plaintiff-appellant Leanna Jaco (Jaco) has challenged the lower court's dismissal of the plaintiff's complaint for failure to state a cause of action upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff's son (the decedent) was shot and instantly killed by police officers following an incident in which he had reportedly been discharging firearms outside of his home. Believing the shooting unjustified, plaintiff initiated this action in district court, alleging violations of the decedent's civil rights. The police officers involved in the shooting and the Mad River Township Board of Trustees were named as defendants.

Specifically, plaintiff alleged violations of decedent's civil rights as guaranteed by the due process and equal protection clauses of the Fourteenth Amendment to the Constitution, the First, Fourth, and Fifth Amendments, and 42 U.S.C. §§ 1983, 1985(2) and (3), 1986, and 1988. Jaco also sought compensation under Ohio's wrongful death statute, Ohio Rev.Code § 2125.05. In the language of the Amended Complaint, the plaintiff "brings this action as a survivor's action on behalf of the heirs of the decedent and the wrongful death action for benefit to the beneficially titled next of kin in accordance with Ohio Revised Code 2125.01 et seq. who are plaintiff Leanna Jaco, the decedent's father Ralph C. Storer and decedent's brother David L. Storer".

The district court held that decedent's civil rights cause of action did not survive his death, and therefore granted defendant's motion to dismiss for failure to state a claim. There ensued this appeal.

The real controversy in this case is more one of standing than of the sufficiency of the complaint to state a cause of action. The resolution of the standing issue requires an examination of the interrelationship between the federal civil rights statute, 42 U.S.C. § 1983, and Ohio's survival and wrongful death statutes.

■ Section 1983 creates a cause of action for deprivation of civil rights.[1] By its own terminology, the statute grants the cause of action "to the party injured". Accordingly, it is an action *personal* to the injured party. In addressing the very issue presented herein, the United States Supreme Court in *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), mandated that determination of the applicable survivorship rule for actions arising pursuant to 42 U.S.C. § 1983, was governed by 42 U.S.C. § 1988.[2] In *Robertson*, the Court stated that:

> This statute recognizes that in certain areas "federal law is unsuited or insufficient 'to furnish suitable remedies'"; federal law simply does not "cover every issue that may arise in the context of a federal civil rights action." *Moor v. County of Alameda*, 411 U.S. 693, 702, 703, 93 S.Ct. 1785, 1795, 1792, 36 L.Ed.2d 596 (1973), quoting 42 U.S.C. § 1988. When federal law is thus "deficient", § 1988 instructs us to turn to "the common law, as modified and changed by the constitution and statutes

of the (forum) State," as long as these are "not inconsistent with the Constitution and laws of the United States."

\* \* \* \* \* \*

[O]ne specific area not covered by federal law is that relating to "the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant."

436 U.S. at 587, 589, 98 S.Ct. at 1994.

■ As noted in *Robertson v. Wegmann*, the law of the forum is "the principle reference point in determining survival of civil rights actions, subject to the important proviso that state law may *not* be applied when it is 'inconsistent with the Constitution and laws of the United States'". 436 U.S. at 590, 98 S.Ct. at 1995. [emphasis added]. Accordingly, a review of the law of the State of Ohio as it applies in this case is in order. Ohio's survival of actions statute, Ohio Rev.Code § 2305.21 reads [emphasis added]:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, *or injuries to the person* or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

Ohio's survivorship statute explains that "injuries to the person" survive the death of the decedent. The complaint in the in-

1. In relevant parts, the statute reads:
   **§ 1983. Civil action for deprivation of rights.**
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Section 1988 reads in relevant parts:
   The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of the Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

stant action admits that the injury resulting from the shotgun blast caused the instant death of the decedent. In addition to the state survival act, the district court also considered the state's wrongful death statute relevant in deciding the issue of standing in this federal civil rights claim.[3]

The decedent's cause of action for infringement of his civil rights, measured by the precise mandate of 42 U.S.C. § 1983, cannot survive by virtue of the Ohio survival statute, § 2305.21 of the Ohio Revised Code since death was instantaneous.[4] It is perhaps appropriate at this juncture to distinguish between survival actions and wrongful death actions. It is conceded by most courts that they are distinct causes of action. *E.g., Rosa v. Cantrell,* 705 F.2d 1208, 1222 (10th Cir.1982). A survival claim is predicated upon the decedent's claim for damages sustained during his lifetime. On the other hand, a wrongful death action creates a new and separate claim or cause of action for the damages sustained by decedent's estate as a result of his death. The distinction as it arises in conjunction with alleged § 1983 violations is apparent. The § 1983 cause of action, by virtue of the explicit language of the section itself, is a personal action cognizable only by the party whose civil rights had been violated; while, on the other hand, the wrongful death action is a cause of action that inures to the benefit of decedent's estate, as a result of, not the personal injury suffered by the *decedent,* but rather, injuries to his estate caused by his wrongful death. This court has consistent-

ly distinguished these separate causes of action in *Jones v. Wittenberg University,* 534 F.2d 1203 (6th Cir.1976), and *Hall v. Wooten,* 506 F.2d 564 (6th Cir.1974), interpreting Ohio and Kentucky law, respectively. This court's pronouncements in *Wittenberg University* and *Wooten* reflect a concise and accurate interpretation of both legislative enactments. The perspicuous language of both the Ohio and Kentucky statutes leaves no area for their reinterpretation. It should be noted that in both *Wittenberg University* and *Wooten,* the plaintiffs' decedents survived their injuries for a discernible period before their demise and experienced, during that period of survival, conscious pain and suffering. Accordingly, it was the period of conscious pain and suffering experienced by the plaintiffs' decedents during the interval between injury and ultimate death, not the death itself, which constituted the cause of action which survived the death of the decedent. Patently, Ohio's wrongful death statute creates a cause of action in tort in favor of the decedent's heirs for damages resulting from losses of prospective advantages which have been pretermitted by the wrongful death of the victim. Certainly, in a sense, the heirs are injured parties as a result of decedent's premature demise however, to arbitrarily conclude that their injuries resulted from an infringement of their civil rights would be sheer obfuscation of the issue. Simply stated, the wrongful death of the decedent resulting from a tort, which gives rise to the cause of action for the benefit of his heirs, is not equivalent to

---

**3.** As germane to the within inquiry, the Ohio wrongful death statute states as follows:

When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the corporation which or the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, not withstanding the death of the person injured and although the death was caused under circumstances which make it murder in the first or second degree or manslaughter.

**4.** *See Rubeck v. Huffman,* 54 Ohio St.2d 20, 374 N.E.2d 411 (1978) (personal injury cause of action didn't survive plaintiff's decedent's death where it appeared decedent died immediately in a head-on collision); *Allen v. Burdette,* 139 Ohio St. 208, 39 N.E.2d 153 (1942) (damages in a survival action are limited to those arising from injuries sustained by decedent during his lifetime); *Hillard v. Western & Southern Life Insurance Co.,* 68 Ohio App. 426, 34 N.E.2d 75 (survival action by administrator for decedent's personal injuries does not include damages for death resulting from such injuries).

decedent's personal § 1983 claim, and decedent's administratrix is therefore without standing in the federal forum to commence an action, pursuant to §§ 1983 and 1988, under either the Ohio survivor or wrongful death statute.[5] *See Jones v. Wittenberg, supra.*

■ Having concluded that Ohio law forecloses the survival of this § 1983 action, this court is constrained to again scrutinize *Robertson v. Wegmann* for direction. Section 1988 of Title 42, as applied by the Supreme Court in *Robertson v. Wegmann,* mandates this court to decide if the abatement of the decedent's civil rights action by the statutes of the forum state would be "inconsistent with the Constitution and laws of the United States". 42 U.S.C. § 1988; *Robertson v. Wegmann,* 436 U.S. at 590, 98 S.Ct. at 1995. When the relevant state law appears "inhospitable to survival of § 1983 actions", *Robertson,* 436 U.S. at 594, 98 S.Ct. at 1997, federal courts are directed to determine if abatement would have an "independent adverse effect on the policies underlying § 1983", *id.:*

> In resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at "the policies expressed in (them)." Of particular importance is whether application of state law "would be inconsistent with the federal policy underlying the cause of action under consideration." The instant cause of action arises under 42 U.S.C. § 1983, one of the "Reconstruction civil rights statutes" that this Court has accorded

" 'a sweep as broad as (their) language.' "

436 U.S. at 590, 98 S.Ct. at 1995 [citations omitted]. Notwithstanding the broad interpretative range provided to the Reconstruction Acts, there is no "rule of absolute survivorship" respecting § 1983 claims. *Id.* For the purposes of the § 1988 analysis, state law cannot be deemed "inconsistent" with federal law merely because it results in a loss of the action. *Id.,* 436 U.S. at 593, 98 S.Ct. at 1996. Instead, the abatement must be judged against the congressional intent of § 1983 to compensate those injured by an infringement of their civil rights effected under color of law; only if the forum state's legislative enactments fail to provide for the survival of the § 1983 action in a manner contrary to that policy does § 1988 allow the federal court to disregard the state law.

In *Robertson,* the Louisiana decedent filed his civil rights action and four years later, prior to the commencement of trial, he died of causes unrelated to the civil rights violations. Upon his death the executor of his estate was substituted as plaintiff. Defendants thereupon moved the district court to dismiss the action because the relevant state law provided that the plaintiff's action survived only in his immediate heirs, none of whom were living at the time of his demise. The trial court held that by failing to provide for broader survival of the decedent's civil rights action, the state law was inconsistent with the policies underlying § 1983 and therefore to be disre-

---

**5.** Although the district court in this case was apparently aware of the differences between the statutes, as discerned in *Jones, supra,* it stated that "[b]ecause plaintiff seeks relief under the Ohio Wrongful Death Statute ... the court must determine whether a cause of action for wrongful death survives the death of the decedent under Ohio law, in order to determine whether the claim is cognizable under Section 1988".

This passage reflects a basic misunderstanding of the application of the wrongful death statute to the instant case. First, it is ambiguous: a cause of action for wrongful death could not possibly abate at the death of the decedent since it is that very event which gives rise to the

claim in the first instance. Second, the claim of Jaco's heirs under the wrongful death enactment is a cause of action separate from the civil rights claim and should have been treated as a *state* claim subject to the trial court's pendent jurisdiction. Federal courts look to state survival statutes to determine the validity of the action, Ohio's wrongful death enactment creates a cause of action—it is *not* a law regulating the survival of the decedent's legal claims. Because it is not adapted to the object of providing for the continuation of personal causes of action, the wrongful death statute is irrelevant to the § 1988 analysis imposed on this action by *Robertson v. Wegmann, supra.*

garded in favor of survival. The court of appeals affirmed.

The Supreme Court reversed. It concluded that the state law was not generally hostile to survivorship of tort claims merely because it restricted the power to prosecute those claims to the immediate relatives of the decedent. Because the Court considered the restriction reasonable, it found it "difficult to see how any of § 1983's policies would be undermined" by permitting abatement of the § 1983 action.

In reaching that decision, the Court in *Robertson v. Wegmann*, identified two policies underlying § 1983 which must be analyzed before a federal court can, notwithstanding abatement under the stricture of state law, declare the necessity for a survival of a civil rights claim thus, effectively, creating a "federal common law" survival of actions rule. 436 U.S. at 590–92, 98 S.Ct. 1995–96. Specifically, courts are instructed to gauge the impact of abatement upon the "goal of compensating those injured", and "§ 1983's role in preventing official illegality". 436 U.S. at 592, 98 S.Ct. at 1996. The Court's explication of the analysis is particularly enlightening with respect to the instant appeal:

> Despite the broad sweep of § 1983, we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship. The policies underlying § 1983 include compensation of persons injured by a deprivation of power by those acting under color of state law.
>
> \*     \*     \*     \*     \*     .\*
>
> The goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who merely survives as the executor of

the deceased's estate. And, given that most Louisiana actions survive the plaintiff's death, the fact that a particular action might abate surely would not adversely affect § 1983's role in preventing official illegality, at least in situations in which there is no claim that the *illegality* caused the plaintiff's death. A state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him. In light of this prospect, even an official aware of the intricacies of Louisiana survivorship law would hardly be influenced in his behavior by its provisions.

436 U.S. at 5920–9, 98 S.Ct. at 1995–96 [emphasis added, footnotes deleted].[6]

■ In *Robertson*, the state law had afforded the decedent an opportunity to pursue his constitutional claim and, upon his death from causes unrelated to the alleged illegal act, a reasonable state vehicle for the survival of that claim had been provided. In contrast, in the case at bar strict adherence to the relevant state law eviscerates the civil rights claim. Under Ohio's survival statute, this decedent's civil rights cause of action *would* have survived if his death had not been instantaneous; in light of the sweeping language of the enactment, to suggest that the Congress had intended that a civil rights infringement be cognizable only when the victim encounters pain and suffering before his demise, is absurd. The § 1983 objective of protecting individual civil liberties by providing compensation to the victim for an illegal deprivation of constitutional entitlements by state officers cannot be advanced, and is only undermined, by deferring to a state law which decrees abatement under circumstances where, as here, asserted constitutional infringements resulting from action

---

6.  In further examining the impact of survivorship on § 1983's role in preventing official misconduct, the Court again distinguishes cases in which the illegal activity of state officers is connected with the plaintiff's death. Thus, in footnote 10, the Court stated:

> In order to find even a marginal influence on behavior as a result of Louisiana's surviv-

orship provisions, one would have to make the rather farfetched assumptions that a state official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the § 1983 suit (for reasons entirely unconnected with the official illegality) and who would not be survived by any close relatives.

taken under color of law caused instant death. Surely, § 1983's further purpose to discourage official constitutional infringement would be threatened if Jaco were not permitted to champion her dead son's civil rights. Ohio's survivorship law *is* then hostile to "the Constitution and laws of the United States". To afford effect to the expressions and directions of the Supreme Court in *Robertson v. Wegmann,* where, as here, the survival statutes of the forum state are hostile to promoting deterrence, protection and vindication against § 1983 civil rights infringements perpetrated under color of law, the federal court must implement the congressional intent by allowing survival.

Accordingly, this court concludes that the decedent's civil rights claim, a personal cause of action, may be pursued in the name of the decedent's personal representative, as defined by the law of the forum jurisdiction, in this case Ohio. Insofar as Jaco qualifies as her son's personal representative under Ohio law, *see generally Schaeffer v. D & J Produce, Inc.,* 62 Ohio App.2d 53, 403 N.E.2d 1015 (1978); *Adams v. Malik,* 106 Ohio App. 461, 155 N.E.2d 237 (1957); *Hunter v. McKinney,* 45 Ohio Op. 498, 101 N.E.2d 810 (Ohio C.C.P.1951), she has standing to prosecute the § 1983 claims arising from his death. Therefore, the dismissal of appellant's § 1983 complaint is reversed.

The district court also dismissed appellant's complaint alleging violations of 42 U.S.C. §§ 1985(2), and 1985(3), which create a cause of action against those who *conspire* to obstruct justice, or to deprive any person of equal protection or the privileges and immunities provided by the Constitution, and § 1986, which makes actionable the failure to prevent "any of the wrongs conspired to be done" under § 1985. Jaco had alleged that the basis of the conspiracy was the failure of the township to adequately maintain and control its police officers, who are the remaining defendants to the action. The district court's dismissal of the § 1985(2) claim was correct, since even in its most liberal construction, plaintiff's complaint merely alleged broad conclusory negligence language void of the factual allegations necessary to support a conspiracy theory.

The dismissal of appellant's § 1985(3) claim is also affirmed because the complaint failed to allege a class-based conspiracy. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980). Because Jaco's § 1986 claim was dependent upon the existence of a valid § 1985 cause of action, it was likewise properly dismissed.

The judgment of dismissal is reversed in part and affirmed in part; the cause is remanded to the district court for further proceedings, consistent with this opinion, on the appellant's § 1983 complaint. The costs on this appeal shall be borne by each party.