NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0898n.06
Filed: November 15, 2005

Nos. 04-5537/5540/5573

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **DAVID PERRY, et al.,** | ) | |
| | ) | |
| *Plaintiffs-Appellants* | ) | |
| *Cross-Appellees*, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| **SOUTHEASTERN BOLL WEEVIL** | ) | |
| **ERADICATION FOUNDATION, INC., et al.,** | ) | **O P I N I O N** |
| | ) | |
| *Defendants-Appellees* | ) | |
| *Cross-Appellants*. | ) | |
| | ) | |

BEFORE:     COLE, ROGERS, and McKEAGUE

   **R. GUY COLE, JR., Circuit Judge.**  A group of Tennessee citizens sued the Southeastern

Boll Weevil Eradication Foundation ("Southeastern"), the Tennessee Boll Weevil Eradication

Foundation ("Tennessee Foundation"), and various flying services and their respective employees,

for allegedly spraying the insecticide malathion on their persons and properties.  The plaintiffs

asserted a claim under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, Ninth, and Fourteenth

Amendments. The plaintiffs also asserted a claim under 42 U.S.C. § 1985, a claim for injunctive

relief, and several state-law tort claims.

   The defendants moved to dismiss for lack of subject matter jurisdiction, asserting that

Southeastern and the Tennessee Foundation are arms of the federal and state governments

respectively, and are therefore entitled to sovereign immunity. The defendants also moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), alleging that the Perry plaintiffs failed to state a claim upon which relief can be granted. The district court denied the defendants' first motion, finding that Southeastern and the Tennessee Foundation were not entitled to sovereign immunity. The district court, however, granted the second motion, finding that the plaintiffs' complaint had not sufficiently alleged conduct to form the basis of their claims. The district court dismissed the case, declining to exercise supplemental jurisdiction over the plaintiffs' state-law claims. The Perry plaintiffs appealed the district court's dismissal of all the counts in their complaint, save their Ninth Amendment claim. The defendants cross-appealed the district court's denial of their motion to dismiss for lack of jurisdiction on sovereign immunity grounds. For the following reasons, we **AFFIRM** the district court.

## I. Background

Decades ago, the boll weevil beetle traveled to Tennessee where it began to wreak havoc on the state's cotton plants. The boll weevil caused extreme economic losses for the cotton industry in Tennessee and elsewhere. In response, Tennessee declared the boll weevil "a public nuisance, a pest and a menace to the cotton industry." Both the federal and Tennessee governments passed legislation authorizing a program for eradicating the boll weevil in infested areas. For the federal government's part, the Department of Agriculture's Animal and Plant Health Inspection Service was in charge of overseeing the program. For the State of Tennessee, the Tennessee General Assembly enabled non-profit corporations to be certified to engage in cooperative ventures within the state in its effort to eradicate the boll weevil.

Southeastern and the Tennessee Foundation were set up under the federal and state systems respectively to supervise the eradication of the boll weevil. The Tennessee Foundation was created, in part, to collect monetary assessments from the state's cotton growers. Tenn. Code Ann. § 43-6-421. These funds are remitted to Southeastern to be used in the eradication program. The eradication program involved the spraying of malathion on cotton fields. Malathion is a popular insecticide and it is sprayed on cotton fields either by ground equipment or aerial spraying.

On July 30, 2001, the plaintiffs, approximately eighteen citizens of Western Tennessee, led by David Perry, filed a class action lawsuit against the officers, agents and employees of both Southeastern and the Tennessee Foundation, as well as the flying services and pilots who sprayed malathion. The plaintiffs claimed that they suffered personal injuries as well as property damage as a result of the aerial spraying of malathion on their properties and on their persons. The plaintiffs sought compensation, punitive damages, and attorneys' fees under 42 U.S.C. § 1983 based on the defendants' alleged violations of the plaintiffs' Fourth, Fifth, Eighth,[1] Ninth,[2] and Fourteenth Amendment rights. The plaintiffs also sought damages under 42 U.S.C. § 1985 for the defendants' alleged conspiracy to deprive the plaintiffs of their constitutional rights. Finally, the plaintiffs alleged various state tort claims (false imprisonment, assault and battery, and trespass), and sought injunctive relief.

## II. Analysis

### 1. Standard of Review

---

[1] The plaintiffs dismissed their Eighth Amendment claim early in the proceedings below.

[2] The plaintiffs are no longer pursuing their Ninth Amendment claim.

"We review de novo the legal question of whether [an entity] is entitled to sovereign immunity, *Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir. 1997), but accept any pertinent factual findings by the district court unless they are clearly erroneous*, Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 815 (6th Cir. 2002)." *S.J. v. Hamilton County*, 374 F.3d 416, 418 (6th Cir. 2004).

This Court reviews *de novo* the district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6). *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002). "In reviewing a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff[ ] and determine whether the plaintiff[ ] undoubtedly can prove no set of facts in support of the claims that would entitle [him] to relief." *Id.* While the Court should generally accept all of the plaintiff's factual allegations as true, it need not make unwarranted factual inferences. *Id.* Although this standard of review is liberal, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citations omitted).

Plaintiffs argue that the *Andrews* standard is a "heightened pleading requirement" that has been forbidden by the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). They contend that the district court improperly required the plaintiffs to establish a prima facie case with regard to every claim. *Swierkiewicz* is inapposite. In *Swierkiewicz*, the Court evaluated a complaint alleging discrimination based on national origin. 534 U.S. at 509. The Court held that in the discrimination context, it was not necessary for the claimant to allege all the elements of a prima facie case of *inferential* discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973), because the *McDonnell Douglas* test is merely one way of proving discrimination. 534 U.S. at 511. If, for example, the claimant had evidence of *direct* discrimination, then the *McDonnell Douglas* test would be unnecessary. *Id*. Accordingly, the Court in *Swierkiewicz* found that the complaint was sufficient because it alleged that the plaintiff was terminated as a result of his national origin, and gave the relevant dates and details of the termination. *Id*. at 514.

Thus, although we do not require the plaintiffs at the 12(b)(6) stage to present evidence on the elements of their claims, their complaint must nonetheless "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. . . . conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005).

Finally, we review the district court's decision to decline supplemental jurisdiction for an abuse of discretion. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

## 2. Southeastern's Federal Sovereign Immunity Defense

Southeastern claims that it is an arm of an agency of the federal government and, therefore, is immune from this suit. Southeastern has likewise claimed this defense in the parallel case of *Parrett v. Southeastern Boll Weevil Eradication Foundation, Inc.*, Nos. 04-5521/6035/5937 (6th Cir. 2005). For the reasons we enunciate in that opinion, filed contemporaneously with this opinion, we affirm the district court's denial of Southeastern's motion to dismiss for lack of subject matter jurisdiction.

## 3. Tennessee Foundation's Eleventh Amendment Immunity Defense

The Tennessee Foundation claims that it is an arm of the state of Tennessee and, therefore, is entitled to Eleventh Amendment[3] immunity. The entity claiming Eleventh Amendment immunity bears the burden to prove such. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002). In determining whether an entity is an arm of the state, such that it benefits from Eleventh Amendment immunity, we employ a multi-factor test. *Ernst v. Rising*, ___ F.3d ___, 2005 WL 2757534, at * 5, 10 (6th Cir. Oct. 26, 2005) (en banc) (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994) (additional citations omitted)); *see also Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999). These factors consist of: (1) the state's obligation to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity; (3) whether state or local officials appoint the entity's board members; and (4) whether the entity's functions are akin to traditional state or local functions. *Ernst*, 2005 WL 2757534 at *5. The first factor is the most important in this balancing test. *Id*. at *10; *Alkire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003).

First, we look at the state's potential for legal liability for a judgment against the entity, not whether the state would actually pay the judgment in our particular case. *Ernst*, 2005 WL 2757534 at *8; *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997). In this case, the state would not be liable for any judgment against the Tennessee Foundation. Unlike the state statute at issue

---

[3] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been broadly interpreted as conferring on the states an immunity from suit in federal court, even when sued by a Citizen of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890).

in *Ernst*, which specifically made the amount of state funding received by the entity contingent upon how much the entity needed to operate in any given year, *see Ernst*, 2005 WL 2757534 at *11 (finding that Michigan's judicial retirement system was an arm of the state), the relevant statute here specifically notes that any indebtedness incurred by the cotton growers' organization shall be repaid from the assessments on the cotton growers which the Tennessee Foundation collects. Tenn. Code Ann. § 43-6-422(d). Further, any debt of the cotton growers' organization "shall not constitute a debt of the state or any department, agency, political subdivision, official, or employee of the state." *Id.* While it is true that the state treasury has earmarked a special fund to hold the balance of the assessments that the Tennessee Foundation collects from various cotton farmers, there is no indication that the state contributes to the fund, and the state also does not remove any of the monies in the fund for use in other programs. § 43-6-423(f). In fact, the statute requires that, should the boll weevil eradication program be terminated, any remaining funds would revert to the contributing cotton growers, not to the state. *Id.* Accordingly, the state's statutes indicate that the state treasury would not be responsible for any judgment against the Tennessee Foundation.

Second, we look to how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity. Tennessee has referred to the Tennessee Foundation as an entity that is separate and distinct from the state government. The state statute which permits the Commissioner to certify cotton growers' organizations—such as the Tennessee Foundation—for boll weevil eradication activities, notes that the purpose of such certification is for "entering into agreements with the state of Tennessee." § 43-6-421. The fact that the state is contemplating a cooperative agreement indicates that the state did not view the Tennessee Foundation as an internal

entity. Additionally, Tenn. Code Ann. § 43-6-423 sets forth that the cotton growers' organization, in our case the Tennessee Foundation, may select its own "advisory boards," "special committees," legal counsel, etc. The statute also expressly permits that the Tennessee Foundation may be impleaded in all courts, and, as previously noted, may incur its own debt for which it is responsible. This is in direct contrast to the situation in *Ernst*, where the state was responsible for the management functions of the entity in question and the state attorney general served as the entity's legal counsel. *Ernst*, 2005 WL 2757534 at \*11.

The evidence further suggests that the state has very little daily control over the Tennessee Foundation. Although the defendants argue that the Tennessee Commissioner of Agriculture has the ability to levy fines and assess penalties against cotton growers who are not in compliance with the Commissioner's regulations, the defendants have not explained how that affects the Tennessee Foundations' activities. It is also noteworthy that Tenn. Code Ann. § 43-6-403 contemplates that the Commissioner will share his responsibilities with other organizations in a cooperative effort to eradicate the boll weevil. Accordingly, this second factor weighs against the Tennessee Foundation's claim that it is an arm of the state.

Third, we must look to whether state or local officials appoint the entity's board members. The Tennessee Foundation has acknowledged that it has "its own Board of Directors." Appellee's Br. at 37. By statute, the Board only has one member who is a representative of the state government. Tenn. Code Ann. § 43-6-421(b)(4)(C). This board member is appointed by the Commissioner. The board also consists of four cotton growers appointed by the Commissioner and "One (1) representative from each cotton producer organization certified as a producer organization

by the National Cotton Council and eligible to name delegates to such council." § 43-6-421(b)(4)(A)–(B). There is no evidence in the record as to how many total board members the Tennessee Foundation has. However, the state's power over the board is limited. While the Commissioner has the ability to appoint five board members, only one of them is permitted to be a representative of the state. Accordingly, the third factor weighs against the Tennessee Foundation's claim that it is an arm of the state.

Finally, we must determine whether the Tennessee Foundation's functions are akin to traditional state or local functions. Here, the main purpose of the Tennessee Foundation is to collect the monetary assessments that are made against the cotton farmers pursuant to the cotton farmer referendum. In fact, the cotton farmers themselves directly participate in determining the amount of the assessment. This monetary assessment is more similar to a fee than a tax, as a tax is "a revenue raising measure levied for the purpose of paying the government's general debts and liabilities and that a fee is imposed for the purpose of regulating a specific activity or for defraying the cost for providing a service or benefit to the party paying the same." *Tucker Corp. v. City of Clarksville*, No. M2002-00627-COA-R3-CV, 2003 Tenn. App. LEXIS 401, *13 (Tenn. Ct. App. May 30, 2003) (citing *City of Tullahoma v. Bedford County*, 938 S.W.2d 408 (Tenn. 1997) (citing *Memphis Retail Liquor Dealers' Ass'n, Inc. v. City of Memphis*, 547 S.W.2d 244, 245-46 (Tenn. 1977))). "The essential test to determine whether fees are or are not taxes is whether they are, or are not, paid into the general public treasury and disbursable for general public expenses." *Id.* (citing *Memphis Natural Gas Co. v. McCanless*, 194 S.W.2d 476 (Tenn. 1946)). Accordingly, the fourth factor weighs against the Tennessee Foundation's claim that it is an arm of the state.

All four factors, including the first and foremost factor, weigh against a finding of sovereign immunity. Therefore, we affirm the district court's denial of the Tennessee Foundation's motion to dismiss for lack of jurisdiction.

**4. Plaintiffs' Fourth Amendment Claim**

Plaintiffs contend that the spraying of malathion on their properties and persons infringed on their right to be free from unreasonable searches and seizures under the Fourth Amendment. Aside from citing to the Fourth Amendment and noting that they were either prisoners in their homes or driven from their homes because of the malathion spray, there are no further allegations in the complaint about how the spraying caused the plaintiffs to be either searched or seized.

We look first at the "search" aspect of plaintiffs' complaint. Construing the complaint in a light most favorable to the plaintiffs, they have only claimed a bare assertion that they were searched. The plaintiffs did not plead in their complaint anything from which a court could infer a search.

We next turn to the "seizure" issue. In order to state a claim for an unconstitutional seizure where a plaintiff claims that he was not free to leave his home, a plaintiff must allege that there was some show of authority by the state, such that a reasonable person would not feel free to leave, and such that the person at issue actually did not leave. *Bennett v. City of Eastpointe*, 410 F.3d 810, 833 (6th Cir. 2005). Plaintiffs fail to allege that there was a showing of authority by the state. A showing of authority "requires an intentional acquisition of physical control. As a result, a seizure occurs even when an unintended person or thing is the object of the detention or taking, so long as the detention or taking itself is willful." *Fisher v. City of Memphis*, 234 F.3d 312, 318 (6th Cir.

2000).  Here, the plaintiffs did not allege in their complaint that the defendants willfully sprayed malathion on the plaintiffs' properties in order to control the physical movement of the plaintiffs.[4,5]

As plaintiffs have failed to state a Fourth Amendment claim upon which relief can be granted, we affirm the district court's dismissal of this count.

## 5.  Plaintiffs' Fifth Amendment Claim

The plaintiffs alleged that the spraying of malathion on their properties from July 2000 to December 2001 constituted a taking without just compensation.  The district court found that the takings claim was not ripe for adjudication because the plaintiffs had failed to exhaust their state remedies prior to filing the federal takings claim.  The district court also found that plaintiffs failed to allege a permanent deprivation of their property such that dismissal under 12(b)(6) was proper.  As we agree with the district court that the takings claim was not ripe for adjudication, we do not reach the issue of whether plaintiffs' Fifth Amendment complaint was adequately pleaded.

A plaintiff alleging a taking of property without just compensation must first exhaust state procedures for obtaining compensation.  *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191-95 (1985).  This is because the Fifth Amendment does not require that just compensation be paid in advance of the taking; rather, "all that is required

---

[4] It is worth noting that the plaintiffs, in their conspiracy count, allege that the defendants acted with "reckless disregard" and not with the intent to acquire physical control of the plaintiffs.

[5] On appeal, plaintiffs allege the "Defendants intentionally and systematically sprayed the poison on plaintiffs, their homes, person, families, animals, and properties and that such intentional spraying of the poisons was unlawful and intentional, subject to the 'reasonableness standard' of the Fourth Amendment."  However, in an appeal of a dismissal pursuant to 12(b)(6) we are limited to the allegations pleaded to in plaintiffs' complaint.

is that a reasonable, certain, and adequate provision for obtaining compensation exists at the time of the taking." *Id*. at 194 (internal quotation marks omitted). In applying the *Williamson* ripeness test, "this court must ask whether there existed in Tennessee at the time of the taking a reasonable, certain, and adequate provision for obtaining just compensation, and if so, whether the [plaintiffs] sought and were denied just compensation for the takings under that provision." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). During the time plaintiffs allege the spraying of malathion occured, Tennessee law provided that an aggrieved individual could file an "inverse condemnation" action in which the individual could recover the value of the property that had been taken by the state government. *See* Tenn. Code. Ann. § 12-1-101 *et seq*.

Once it is clear that some state procedure is available for obtaining compensation, the burden is on the plaintiff to show why that procedure was somehow inadequate. *See Williamson*, 473 U.S. at 196-97. The plaintiffs argued that they did not have to exhaust state inverse condemnation options because the defendants did not truly possess the power of eminent domain, and therefore the Tennessee state procedures would not apply to these defendants. Although the plaintiffs do not concede that the defendants are not "state actors," the plaintiffs essentially argue that the defendants are not state actors but yet possess the power to commit a taking. Beyond this argument, the plaintiffs do not explain why the Tennessee inverse condemnation procedure would not apply to the defendants other than to cite to *Kruse v. Village of Chagrin Falls*, 74 F.3d 694 (6th Cir. 1996). *Kruse* is inapplicable, however, because *Kruse*, applying Ohio law, held that, "unlike Tennessee and a number of other states which have explicit statutory procedures governing inverse condemnation to compensate landowners whose property has been taken in violation of the Constitution and the

state's eminent-domain statutes, *Ohio does not have such a statute.*"   *Id.* at 698 (emphasis in original).

As plaintiffs have not shown that their claim was ripe for disposition, we affirm the district court's dismissal of their Fifth Amendment claim.  We need not reach the issue of whether the complaint stated a valid Fifth Amendment claim.

**6.  Plaintiffs' Fourteenth Amendment Due Process Claim**

Plaintiffs asserted that the defendants violated their Fourteenth Amendment rights by spraying malathion on their persons and properties.  The Fourteenth Amendment prohibits any state deprivation of life, liberty, or property without due process of law.  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  The plaintiffs' complaint asserted that the spraying of malathion on their properties and persons caused, in some cases, physical pain to the plaintiffs.  Therefore, they have sufficiently alleged — for 12(b)(6) purposes — a deprivation of liberty interests.  *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (holding that one has a liberty interest in being free from physical injuries or punishment).

Under § 1983, however, plaintiffs "must plead. . . that state remedies for redressing the wrong are inadequate."  *Vicory v. Walton*, 721 F.2d 1062, 1065–66 (6th Cir. 1983).  *See also Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 585 (6th Cir. 2004).  Therefore, we must examine whether the plaintiffs have asserted that they were deprived of their liberty interest without adequate process.

We are mindful that "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848–49 (1998). The Fourteenth Amendment is not a "'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Further, "our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* (citation omitted).

Plaintiffs have not met their pleading burden. They have not pleaded what state remedies, if any, existed, and how they were inadequate. *See Pilgrim v. Littlefield*, 92 F.3d 413, 417 (6th Cir. 1996) (plaintiffs seeking relief under § 1983 for due process violations need to plead what "remedies, or lack of remedies," are available, or not, and why any available remedies are inadequate). Accordingly, the plaintiffs have failed to state a claim under the Fourteenth Amendment.

As plaintiffs have not adequately pleaded a Fourteenth Amendment due process violation, we affirm the district court's dismissal of this claim.

## 7. Plaintiffs' 42 U.S.C. § 1985 Claim

Plaintiffs allege that the corporate defendants conspired to spray the malathion and that they failed to supervise or control the spraying with reckless disregard. They seek to recover damages for their conspiracy claim pursuant to 42 U.S.C. § 1985.

Section 1985 creates a "cause of action against those who *conspire* to obstruct justice, or to deprive any person of equal protection or the privileges and immunities provided by the Constitution . . . ." *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984). To establish a claim under § 1985, plaintiffs must allege "(1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Conspiracy claims, even those brought via § 1985, must be pleaded with specificity. *Jaco*, 739 F.2d at 245; *Delzer v. County of Allegan*, No. 99-1368, 2000 WL 658068, at *2 (6th Cir. May 9, 2000). Therefore, the complaint must set forth factual allegations to support the underlying conspiracy claim in order to survive a 12(b)(6) motion; a complaint that broadly alleges negligence with no further factual allegations is insufficient. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Aside from alleging that they were injured by the spraying of malathion that occurred between July 15, 2000 and December 31, 2001, the plaintiffs do not set forth any additional factual allegations indicating when, where, or how the defendants conspired to spray the malathion in a manner damaging to the plaintiffs. Accordingly, it appears that the plaintiffs have failed to plead, with particularity, their conspiracy claim.

Further, the plaintiffs have not alleged that the conspiracy was motivated by class-based animus. *See Johnson*, 40 F.3d at 839 ("Plaintiff must also establish that the conspiracy was motivated by a class-based animus."); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The

language [of § 1985] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."). The plaintiffs have not alleged any particular invidious class-based discrimination. On appeal, the plaintiffs argue that the discriminated "class" consists simply of those living near the sprayed area. It is not enough, however, that the plaintiffs allege that they were targeted as those people living near the sprayed area, they must allege some sort of invidious class-based discrimination. While it is true that the plaintiffs need not prove this class-based discrimination in their complaint, they must at least allege some sort of animus. *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992). The plaintiffs have not done so here. The complaint offers no basis for what would have motivated the defendants' purported actions in this case.

As the plaintiffs have not adequately pleaded their § 1985 claim, we affirm the district court's dismissal of this claim.

## 8. Injunctive Relief

In addition to their constitutional claims, the plaintiffs sought to enjoin the defendants from further spraying of malathion on their persons or property. In order to seek equitable relief, one must allege that there is either no remedy or an inadequate remedy at law. *Coffman v. Breeze Corps., Inc.*, 323 U.S. 316, 322 (1945). In the instant case, the plaintiffs have not alleged that there was no adequate legal remedy. They have also not alleged any facts indicating that the malathion spraying was or would be continuing. The plaintiffs make no response to this requirement, except

to reiterate that they have given clear notice as to the grounds on which they seek injunctive relief, namely, that they want to enjoin any further spraying from taking place.

As the plaintiffs have not properly pleaded their request for injunctive relief, we affirm the district court's dismissal of plaintiffs' equitable relief claim.

## 9. State Tort Claims

The plaintiffs' complaint contained several state-law tort claims against the defendants, including false imprisonment/unlawful detention, assault and battery, and trespass. The district court, after dismissing the federal claims, declined to exercise supplemental jurisdiction over these state-law claims. As discussed *supra*, we review this decision for an abuse of discretion.

Although the plaintiffs may very well have valid state-law tort claims, once the district court dismissed the core federal claims from the case, it was appropriate for it to dismiss, without prejudice, the state claims, so that the plaintiffs may pursue these claims in a more appropriate forum. *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996); *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant state law claims should be dismissed."). Accordingly, the district court did not abuse its discretion by declining to exert supplemental jurisdiction over the plaintiffs' state tort law claims.

As the district court did not abuse its discretion, we affirm the district court.

### III. Conclusion

For the preceding reasons, we **AFFIRM** the judgment of the district court.