*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0188p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

KENNETH E. HAGGARD; MARYANN
TOMCZYK,

                *Plaintiffs-Appellants,*

     *v.*

JOHN S. STEVENS,

                *Defendant-Appellee.*

No. 10-4261

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:09-cv-1144—James L. Graham, District Judge.

Argued: March 7, 2012

Decided and Filed: June 20, 2012

Before: CLAY and KETHLEDGE, Circuit Judges; DOW, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Marion H. Little, Jr., ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellants. John J. Stark, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee. **ON BRIEF:** Marion H. Little, Jr., Christopher J. Hogan, ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellants. John J. Stark, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

     KETHLEDGE, J., delivered the opinion of the court, in which DOW, D. J., joined. CLAY, J. (pp. 7–11), delivered a separate concurring opinion.

_____

[*] The Honorable Robert M. Dow, Jr., United States District Judge for the Northern District of Illinois, sitting by designation.

---

**OPINION**

---

KETHLEDGE, Circuit Judge.  Kenneth Haggard and Maryann Tomczyk filed this *Bivens* action against John Stevens, an investigator for the Federal Deposit Insurance Corporation.  After they filed suit, Stevens died.  The district court held that Stevens's death extinguished the *Bivens* claim, and dismissed the suit.  We agree with the district court and affirm.

I.

The plaintiffs are the sole shareholder and the Chairman, respectively, of Miami Valley Bank in Ohio.  Both plaintiffs also own stock in a mortgage lender with which the bank had several loan agreements.  In the spring of 2007, the FDIC began an investigation of the loan agreements.  State and federal regulators eventually closed the bank and appointed the FDIC as a receiver.  The FDIC purportedly halted its investigation, however, once an accounting expert confirmed that the loans were legal.  The mortgage company then petitioned the receiver for $10 million that the bank owed the mortgage lender.  In retaliation for the $10 million request, John Stevens allegedly prompted the FDIC to resume the investigation of the bank.

The plaintiffs thereafter filed this *Bivens* action against Stevens, alleging that the retaliatory investigation violated the First Amendment.  *See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Stevens died after this lawsuit began.  The plaintiffs argued that their *Bivens* action survived his death, regardless of whether their claim would survive under state law.  In a carefully reasoned opinion, however, the district court held that state law controls the survivability of *Bivens* actions, subject to one exception not applicable here.  The court thus applied Ohio law, under which the death of Stevens extinguished the plaintiffs' claims against him.

This appeal followed.

II.

A.

The plaintiffs read the Supreme Court's opinion in *Carlson v. Green*, 446 U.S. 14 (1980), to require a uniform rule that *Bivens* claims always survive the death of either party to the suit.  The *Carlson* plaintiff was the mother of a prisoner who died in prison from an asthma attack.  *Id.* at 16 & n.1.  She brought a *Bivens* action in federal court against the Director of the Federal Bureau of Prisons, alleging that prison officials had delayed treatment for her son's attack, in violation of the Eighth Amendment.  *Id.*  The claim would not have survived her son's death under Indiana law.  *Id.* at 24.  But the Supreme Court held that the claim survived nonetheless, noting among other things that "'uniform treatment'" of *Bivens* claims would promote "'complete vindication of constitutional rights.'"  *Id.* at 24 (citation omitted).

The plaintiffs seize upon that language here in arguing for a rule that *Bivens* claims always survive the death of either party.  But the Court's holding in *Carlson* was not nearly so broad.  The Court did say that a "uniform federal rule of survivorship" would help "redress the constitutional deprivation [t]here alleged."  *Id.* at 23.  The deprivation "[t]here alleged," however, was one in which the defendant's conduct "result[ed] in death"—specifically the plaintiff's death.  *Id.* at 24 (citation omitted).  We read the Court's reference to a "uniform rule" to be limited to that kind of deprivation.  As the Court explained, there is a good reason for a uniform rule of survivorship when the defendant kills the plaintiff:  A rule extinguishing the plaintiff's claim with his death would allow the defendant to "know at the time he decide[s] to act" that he could not be sued, so long as he actually kills the victim.  *Id.* at 25 n.12.  But that rationale is limited to cases—like *Carlson*, but unlike this case—where the defendant causes the plaintiff's death.

Moreover, the Court expressly left "for another day" the question whether, in cases where a party dies through no fault of the other, federal law might "choose to incorporate state rules as a matter of convenience."  *Id.* at 24 n.11.  The plaintiffs here read this reference as allowing incorporation of state law only when that law allows

survival of a *Bivens* claim—which of course means that these claims would always survive the death of a party. But if that is what the Court meant in *Carlson*—that the claims always survive—they presumably would have said as much, rather than have us chase chickens round the barnyard so long as we never catch any. *Cf. Robertson v. Wegmann*, 436 U.S. 584, 593 (1978). The plaintiffs' reading of *Carlson* is implausible.

Moreover, the relevant law has shifted since the "heady days in which th[e] Court assumed common-law powers" to create the *Bivens* cause of action. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring). Specifically, the Supreme Court has since emphasized that the primary goal of *Bivens* is deterrence of unconstitutional conduct by federal officers, rather than compensation for violations that do occur. In *Malesko*, the Second Circuit extended *Bivens* liability, on compensatory grounds, to a private corporation that ran a halfway house for federal prisoners. *See Malesko v. Corr. Servs. Corp.*, 229 F.3d 374, 380 (2d Cir. 2000). The Supreme Court reversed, flatly stating that "[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." 534 U.S. at 70. The Court then thrice repeated that deterrence is the "core" purpose of *Bivens*. *Id.* at 71, 74. Similarly, in *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994), the Court said "the purpose of *Bivens* is to deter the officer." *Id.* at 485 (emphasis omitted).

The plaintiffs' uniform rule of survivorship would do virtually nothing to deter constitutional torts—because virtually nobody is more inclined to commit them based upon the prospect that the actor might die and thus obtain immunity from suit. *Cf. Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998). The plaintiffs' proposed rule of survivability therefore does not advance *Bivens*'s core purpose; and thus we reject it.

## B.

The plaintiffs also argue that their claims should survive under the federal common-law rule for the survivability of statutory causes of action. Under that rule, "remedial" claims—*i.e.*, claims to compensate the plaintiff—survive a party's death, whereas "punitive" claims—*i.e.*, claims to punish the defendant—do not. *See Murphy*

*v. Household Fin. Corp.*, 560 F.2d 206, 208–09, 211 (6th Cir. 1977); *see also Ex parte Schreiber*, 110 U.S. 76, 80 (1884). The plaintiffs ask us to apply this rule here, contending that their *Bivens* claim is remedial and thus should survive Stevens's death.

But here again the plaintiffs' argument is inconsistent with the Court's analysis in *Carlson*. If the federal common law required survival of *Bivens* claims as remedial causes of action, then the Supreme Court could have saved itself a lot of analysis in *Carlson* simply by citing that rule. Yet the Court never mentioned it. The Court also predicted that, in some instances, state law would control survivorship questions—which would be untrue if the federal common-law rule always governed them. Under *Carlson*, therefore, we conclude that the survivorship of *Bivens* claims is not governed by the federal common law for the survival of statutory claims. *Cf. Mallick v. Int'l Bhd. of Elec. Workers*, 814 F.2d 674, 678 (D.C. Cir. 1987) (treating federal common-law rules of survivorship as superannuated even for federal statutory claims).

That leaves the question of what *does* govern survivorship of *Bivens* claims when the defendant dies. Although survivorship of a *Bivens* claim is a question of federal law, *see Carlson*, 446 U.S. at 23, federal courts routinely look to state law to fill in the gaps of federal law. *See id.* at 29 (Powell, J., concurring) ("[F]ederal courts routinely refer to state law to fill the procedural gaps in national remedial schemes"); *see also Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998).

This court already applies state law to decide another issue within the same genus as the one presented here—namely, how long *Bivens* claims survive after accrual. *See Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (holding that state law supplies the statute of limitations in *Bivens* actions). We see no reason to treat the issue here any differently. Moreover, as noted above, the Supreme Court itself has suggested that we look to state law to answer survivorship questions in cases where the defendant's actions do not result in the plaintiff's death. We adopt that suggestion today.

The plaintiffs here do not dispute that, if state law governs the survivability of their claim, the applicable state law is that of Ohio, the forum state. *Cf. Jaco v. Bloechle*,

739 F.2d 239, 243 (6th Cir. 1984) (noting that the "forum state['s]" survivorship rules are the default rules for § 1983).  Nor do the plaintiffs dispute that Ohio law extinguishes their claim.

The district court's judgment is affirmed.

--------

## CONCURRENCE

--------

CLAY, Circuit Judge, concurring. While I agree with the majority's decision to affirm the dismissal of Plaintiffs' suit, I write separately to clarify errors in the district court's choice of law analysis and to highlight substantial issues regarding interstitial law in federal civil rights suits that remain unanswered by this panel's decision.

The district court correctly concluded that we must look first to state law in answering the survivorship question at issue in this case.[1] The district court also accurately identified the choice of law issue that arose as a result. However, for whatever (presumably strategic) reason, Plaintiffs placed all their eggs into the basket of arguing that federal law applies, leaving the district court adrift to decide the choice of law question. Although the district court did an admirable job wading through this difficult subject matter without the benefit of adequate briefing by either party, the court nevertheless committed several errors in its analysis that merit clarification.

The laws of at least three states could apply to the facts of this case: Ohio, Michigan, and Illinois. Under Michigan and Illinois law, Plaintiffs' suit clearly would have survived, whereas the issue (as explained further below) is somewhat more problematic under Ohio's survivorship statute. *See Haggard v. Stevens*, No. 2:09-cv-1144, 2010 WL 3658809, at *8 (S.D. Ohio Sept. 14, 2010).

In deciding which state's law to apply, the district court cited this Court's decision in *Baker v. Mukasey*, 287 F. App'x 422, 424 (6th Cir. 2008), for the proposition

--------

[1]In addition to the majority's analysis, the Rules of Decision Act also suggests that we should look first to state law to fill such gaps, unless federal law or policy would suggest doing otherwise. *See* 28 U.S.C. § 1652. ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.") Although the Rules of Decision Act is more typically cited in diversity cases, as essentially the statutory enactment of the *Erie* doctrine, at least two Supreme Court Justices have suggested that the Act also supports looking first to state law when filling interstitial gaps. *See Int'l Ass'n of Machinists and Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 662 n.5 (1997) (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 158 (1987) (Scalia, J., concurring in the judgment) and *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 173 (Stevens, J., dissenting)).

that we apply the law of the state "where the *events giving rise to the claim* occurred." *Haggard*, 2010 WL 3658809, at \*7 (emphasis added).  The district court then compared *Baker*'s "events giving rise" rule against the decisions of other courts that have faced similar choice of law questions in federal civil rights actions.  *Id*.  Although those courts concluded that it is the law of the *forum state* which controls, the district court reasoned that *Baker* was "consistent" with their approach.  *Id*.  Relying on this analysis, the district court adopted *Baker*'s language and concluded that "for various *Bivens* issues arising in this Circuit, the law of the state where the events giving rise to the claim occurred will control."  *Id*.

Unfortunately, the district court failed to draw the distinction that the forum state is not always the same state as that where "the events giving rise" to the claim arose. Part of the district court's confusion might be attributable to the fact that, depending on the jurisdiction, some courts refer to the rule as "the law of the forum state" and others "the law where *the case* arose."  *See Van Tu v. Koster*, 364 F.3d 1196, 1198 (10th Cir. 2004). This inconsistency has required at least one of our sister circuits to clarify that a *case* arises in its forum state, even if the "*events* giving rise" to the action occurred elsewhere.  *Id*.  (emphasis added).

To the extent *Baker* blurs this distinction, the case is a classic expression of the confusion addressed by the Tenth Circuit in *Van Tu*.  Moreover, *Baker* also contradicts precedents established by this Circuit and the Supreme Court that clearly hold that the law of the forum state supplies the interstitial rule in a federal civil rights suit.  *See Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) (forum state); *Hall v. Wooten*, 506 F.2d 564, 567 (6th Cir. 1974) (forum state); *Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("the law of the State in which the *cause of action* arose").  Accordingly, *Baker* is incorrect as a matter of law, and the district court should have held that we look first to the law of the forum state—here, Ohio—to supply the rule for this case's interstitial survivorship question.**²**

---

**2**As part of its analysis, the district court also incorrectly asked whether venue was appropriate. Venue and forum are separate concepts which ought not be conflated.

Even so, Plaintiffs failed to capitalize on two additional avenues that arguably might have saved their suit even under the forum state rule. Because Plaintiffs ignored these arguments, I agree with the majority that dismissal is the appropriate result. However, I highlight the following issues if only to make clear that they remain unanswered by this panel's decision.

First, Plaintiffs could have argued that, although we must first look to the law of the forum state, that rule does not necessarily stand when the parties claim that the interests of states other than the forum state are implicated by the action. Several federal courts, including two circuit courts, have looked beyond the rule of the forum state and applied standard federal conflict of law principles when the parties have disputed *which* state's law to apply in a federal question suit. *See Berger v. AXA Network LLC*, 459 F.3d 804, 809–10 (7th Cir. 2006) (quoting *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1124 (7th Cir. 1994), for the "general maxim that, when state law is borrowed in a federal question suit, the choice of 'which [state] law to select is itself a question of federal law'"); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992) (holding that if "a statute of limitations of a state other than the forum state is implicated in the litigation of a federal claim, then federal, not state, choice of law principles" govern); *Coffey v. United States*, Nos. 08-0588, 09-0028, 2011 WL 6013611, at \*19 n.43 (D.N.M. Nov. 28, 2011) (applying *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941), in a § 1983 claim arising within a Native American territory that could have triggered either federal or New Mexico's statute of limitations periods). Under this theory, Plaintiffs could have argued that, regardless of the forum state's rule, Michigan or Illinois law was the correct state to supply the survivorship rule given the facts of the case and our federal conflicts of law jurisprudence.

Second, even if the forum state was the correct choice to supply the survivorship rule, Plaintiffs could have more forcefully argued that Ohio's survivorship law does not extinguish their claims. The district court adopted the government's argument that because Ohio's "injuries to the person" definition limits survival to claims of physical injury, the claims of financial injury in this case must therefore extinguish after the

defendant's death. *Haggard*, 2010 WL 3658809, at *9 (citing *Witcher v. Fairlawn*, 680 N.E.2d 713,715 (Ohio Ct. App. 1996)).

The district court's analysis rests on the assumption that physical and non-physical claims are always easily distinguishable. However, that assumption fails to recognize that *Bivens* and § 1983 actions "comprehend a wide variety of claims—from discrimination in public employment to illegal arrests and searches to violations of freedom of speech or religion—many of which lack precise analogies in state law." Fallon, et al., Hart and Wechsler's The Federal Courts and The Federal System, 760–61 (5th ed. 2003).

On matters which define the substance of a federal civil rights claim, the Supreme Court has indicated that this Court should not look to state law, but instead should apply "a simple, broad" rule "best characteriz[ing]" all § 1983 and *Bivens* claims as "general" personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 272, 280 (1985). The intent underlying the Court's instruction in *Wilson* was to ensure ease of application and to avoid defining our federal civil rights actions by virtue of disparate state law counterparts. *See also Owens v. Okure*, 488 U.S. 235 (1989) (applying a state's residual statute of limitations for personal injury actions, rather than using the state's more specific rules for enumerated injury actions such as assault, battery, and false imprisonment).

In this case, the line between a physical and non-physical injury is relatively clear. However, one can easily imagine a suit, for instance an illegal arrest claim, where that line would be less distinct. To the extent that Ohio's physical injury rule would threaten to transmute the substance of the federal civil rights action itself, *Wilson* and *Owen* would caution against the importation of state law. *Compare Medina v. Pacheco*, No. 97-2013, 1998 WL 647784, at *5 n.9 (D.N.M. Sept. 14, 1998) (examining a similar state survivorship action that limited survivorship depending on whether the suit was based in negligence or intentional tort); *see also Jaco*, 739 F.2d at 245 (finding that "where [] the survival statutes of the forum state are hostile to promoting deterrence, protection and vindication against [] § 1983 civil rights infringements . . . the federal

court must implement the congressional intent by allowing survival). Under this theory, Plaintiffs could have argued that, even if Ohio's survivorship law applied, the state's physical injury restriction did not.

In any event, Plaintiffs did not pursue these thorny issues, and we need not resolve them to decide this case. Accordingly, I leave them for another day.